CLARENCE E. McMANUS, Judge.
|2This is an appeal by Alexis Marrero, plaintiff-appellant, from a judgment in a jury trial dismissing his claims against Fluor Maintenance Services, Inc., defendant-appellee, in this workplace injury lawsuit. For the following reasons, we affirm the judgment.
The facts are as follows. At the time of the accident at issue here, Marrero was employed by The Cajun Company, Inc. (Cajun). Cajun was operating under a contract with Entergy Louisiana, LLC (Entergy), and was doing scaffolding work inside and outside of a boiler at Entergy’s Nine Mile Point generating facility. Fluor Maintenance Services, Inc. (Fluor) was operating under a separate contract with En-tergy, and was doing welding and other repairs on the same boiler. The boiler is a vessel about 60 feet square and over one hundred feet high. It has grate floors in the interior at various levels, and the work at issue here was being done on the fifth level. There are catwalks on the exterior of the vessel at the various levels which are attached to the outer metal skin with struts coming out from the vessel several feet apart. The inside edges of the catwalks are about 16 inches from the outer skin of the boiler, and evidence showed that this gap was necessary because if the catwalk decking had been installed closer to the boiler, the expansion and ^contraction of the boiler’s outer walls when it was turned on and off would have deformed these walks.
There are also access panels along the walls of the boiler at the various levels. These panels consist of a small door which is bolted over an access opening in the boiler wall, and the opening is about 16 inches square. The lower edge of the access openings is about 3 feet above the exterior catwalks, and similarly about 3 feet above the interior decks. In order to allow the crews to enter the boiler, Cajun built small wooden platforms level with the lower edge of an east side access opening both on the outside and on the inside of the boiler. To enter, a worker would lie down on the outside platform, drag himself through the opening, and end up lying down on the inside platform. From there, he would then climb down onto the interior decking.
The interior of the boiler at issue is classified by OSHA as a “confined space” for which special precautions must be taken for work in such areas. Entergy, Cajun, and Fluor all had in effect safety procedures which complied with the OSHA rules. Testimony by representatives of all three companies showed that a key component of these procedures is to have one entry and exit point which is monitored by a “hole watch,” a person who sits at the access point and signs everyone in and out. They explained that all workers were instructed to enter and exit only through that designated hole, except in an emergency. This procedure is designed to identify all workers who go in, and to make sure that all of them have come out. The east access opening, where the scaffolds had been built, was the designated entry and exit point. The “hole watch” was an employee of Cajun.
On January 13, 2005, two Fluor workers, Junius Braggs and Walter Castro, asked *615 their supervisor if they could open another access panel on the west side of the boiler, and this was agreed to. Mary Lancaster, Entergy’s plant manager, | testified that Fluor had Entergy’s permission to open this panel. The purpose of this second opening was to give access for the welding leads, torch hoses and lighting extensions. Allen Bowers, Cajun’s regional manager, stated that placing the hoses and leads through the east access opening where the workers were entering and exiting would in fact have been a violation of OSHA standards.
On that same day, January 13, the “hole watch” log showed that Marrero had entered the boiler at 3:50 PM and had exited at 5:15 PM. On January 14, Marrero entered at the access point at 11:23 AM. At about 11:45 AM, the crews started to break for lunch and were exiting through the entry-exit point. Marrero, on the other hand, decided to leave by way of the west opening through which the welding leads, torch lines, and extensions had been run. His testimony was that although he did not remember clearly, he thought that he had grabbed some overhead pipes and without looking out to see what was on the outside, he went through the opening feet first. He fell through the 16-inch space between the outer catwalk and the wall of the boiler and came to rest some 30 feet down on an I-beam.
Marrero injured his foot, ankle and spine in the fall. He received workers’ compensation benefits through his employer, Cajun, and its insurer. He brought the present action against Fluor, alleging that it and its employees, Junius Braggs and Walter Castro, were negligent in causing the accident. After trial on the merits, the jury found that Fluor was not negligent, and judgment was entered accordingly. This appeal followed.
Because most of the issues presented here for review involve factual matters, we first note that the standard of review of such determinations is whether they are manifestly erroneous or clearly wrong. Stobart v. State through Dept. of Transp. & Dev., 617 So.2d 880 (La.1993). In order to reverse a trier of fact’s determinations, the | r,appellate court must first find that a reasonable factual basis does not exist for the findings, and further it must conclude that the findings are clearly wrong. Id. When there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
In the present case, Marrero testified that he had seen other workers using the west opening to exit the boiler. He also said that Braggs and Castro, as well as a third unidentified worker, told him it was proper to use the west opening. Although Braggs testified in deposition that he had exited from the west opening, it was not clear whether he was referring to using the hole while running the welding leads and torch hoses, or if he had used it to exit at other times. The “hole watch” log for January 13 shows that Braggs entered and exited through the east opening three times on that day, and also that he entered there again at 4:59 PM, but shows no exit time. On January 14 Braggs entered at 7:40 AM and exited at 9:40 AM. Castro denied ever using the west hole to exit the boiler and the logs for the two days bear this out. He also said that he never saw Braggs do so. Both men stated that they never told Marrero that it was alright to exit on the west. The “hole watch” logs also show that all workers entering on January 13 and 14, had gone in and out of the entry-exit hole, except for Braggs on one occasion, Marrero on the day he fell, and one other worker for whom the “hole watch’s” note for January *616 14, says he was accounted for but did not sign out because of the accident.
Marrero also testified that he was never told by Cajun that he could only exit from the same hole that he had entered. Valley Martinez, Jr., Cajun’s safety manager, testified to the contrary. He said that all Cajun employees, including Marrero, are trained in confined space procedures which mandate that workers only enter and exit through the designated opening where the “hole watch” is stationed. Although it was shown that the “confined spaces” portion of Cajun’s [ ^safety manual which discussed the entry point did not specifically mention exiting through the same point, it is evident that the whole purpose of the “hole watch” procedure is to insure that a list is kept of all workers going into the space so that it will be known whether all of them have come out. If, indeed, workers could exit willy-nilly from any other point, there would be no reason to institute the procedure in the first place.
Marrero also attempted to show that Fluor was negligent in not putting warning tape across the west opening to ensure that no workers went out that way. The testimony of Martinez was again to the effect that he knew of no OSHA, Entergy, Fluor or Cajun rule that would require using warning tape on an opening of the sort at issue here. What regulations there were pertained to places where a worker could fall through a floor or other surface. Martinez also said that it was impossible that a worker could accidentally fall through a 16 by 16 inch hole three feet above the floor. Finally, he noted that there was no way that a worker could have confused the east entry-exit point, with its scaffolding on both sides, with the west hole which had neither.
Considering the above evidence, the jury could reasonably have found that neither Fluor nor Braggs and Castro were negligent in Marrero’s fall. Although Marrero testified that Braggs and Castro told him he could exit from the west, they both denied this. Marrero said he saw other welders going out to the west, and Braggs said he used the west exit several times. However, the “hole watch” logs show that the only time Braggs might have done so was once late on January 13, the day the west hole was opened and the cables were run through it. Castro said he never saw Braggs exiting through the west hole. The “hole watch” logs belie that workers were using the west hole routinely as asserted by Marrero. As to the use of warning tape, the testimony from representatives of Fluor, Cajun and |7Entergy was uniform that neither they nor OSHA had any rule requiring the use of tape over a hole that was impossible to accidentally fall through. It is clear that the jury concluded that Marrero violated his employer’s policy for only using the entry-exit point where the “hole watch” was stationed, and that he caused his own accident by exiting through a hole feet first without ascertaining what was on the other side. This being a reasonable view of the evidence, we may not set aside the jury’s determination on this point.
The second issue concerns the trial judge granting a directed verdict at the close of plaintiffs case in favor of Fluor as to its liability under La.C.C. arts. 2317 and 2317.1. Under La.C.C.P. art. 1810, a directed verdict may be granted at the close of the opposing party’s evidence. Such a verdict is appropriate in jury trials where the court, after considering all evidence in a light most favorable to the movant’s opponent, concludes that the facts and inferences point so overwhelmingly in favor of granting the verdict that reasonable jurors could not arrive at a contrary result. Reed v. Columbia/HCA Information Systems, Inc., 00-1884 (La. *617 App. 5 Cir. 4/11/01), 786 So.2d 142, writ denied, 2001-1384 (La.6/22/01), 794 So.2d 796.
Here, plaintiff argued in the district court, and again urges here, that in opening the west access hole, Fluor acquired garde over the boiler door and outside catwalks. He relies on Dupree v. City of New Orleans, 99-3651 (La.8/31/00), 765 So.2d 1002, for the proposition that because the existence of garde is a fact intensive inquiry, the trial judge erred in taking that determination from the jury. While he is correct as to the fact intensive nature of determining garde, he is incorrect in asserting that it is not subject to a well-pleaded motion for a directed verdict. As stated in Reed v. Columbia/HCA Information Systems, Inc., supra, the | «question is whether the facts and inferences point so strongly in favor of granting the motion that a jury finding to the contrary would be unreasonable.
Here, in her oral reasons for judgment, the trial judge stated that if any defect existed in the boiler, it was the 16 inch gap between the skin of the boiler and the catwalk through which Marrero fell. Because there was no evidence of record to show that Fluor had ever done anything which would have given it custody or control over the positioning of that catwalk on the exterior of the boiler, it could not have acquired garde over that structure. Implicit in this determination is the conclusion that had the jury found otherwise, that would have been an unreasonable determination. We agree. We therefore reject plaintiffs argument in this regard, and affirm the directed verdict;
For the foregoing reasons, the determination by the jury that Fluor was not negligent in causing plaintiffs injuries, as well as the district court’s directed verdict on the La.C.C. arts. 2317 and 2317.1 issues, are hereby affirmed.

AFFIRMED