FREDERICKA HOMBERG WICKER, Judge.
| ¡.This matter is before this Court on appeal by the plaintiff, Reine Pema Sanga, as a result of the trial court’s dismissal of her petition following a trial on the merits. For the following reasons, we affirm the judgment of the trial court.
FACTUAL AND PROCEDURAL HISTORY
This ease arises from a dispute between Ms. Sanga, the company she contracted to repair her roof, Augustino Brothers Construction, LLC, and the company’s principal, Christopher Padermo. On or about May 18, 2012, Ms. Sanga entered into a contract with Augustino Brothers Construction to have her home’s roof replaced. After signing a contract with Mr. Pader-mo, Ms. Sanga tendered $9,132.02 as a deposit. The check was subsequently deposited into Augustino Brothers Construction’s bank account. Both parties agree that Augustino Brothers Construction never repaired Ms. Sanga’s roof.
Ms. Sanga thereafter sought both criminal and civil remedies against Mr. Pader-mo and civil remedies against Augustino Brothers Construction. Ms. Sanga ultimately filed suit against Mr. Padermo and Augustino Brothers Construction in both contract and tort seeking contractual and general damages, including mental anguish, embarrassment, inconvenience, and attorney’s fees. In seeking to pierce.lathe corporate veil, Ms. Sanga alleged that Mr. Padermo defrauded her and committed the crimes of theft and home improvement fraud.
At trial, the parties offered contradictory testimony about the events that followed the formation of the first contract.[1] According to Ms. Sanga, after she and Mr. Padermo signed their first contract and agreed upon a particular type of shingle for her roof, Mr. Padermo informed her that he was unable to obtain the shingles she wanted because of problems related to her credit score. Ms. Sanga testified to her belief that Mr. Padermo lied about his inability to obtain the shingles in order to increase the price of her roof. At trial, Mr. Padermo was not questioned regarding the circumstances that led him to decline to order the shingles for Ms. Sanga’s roof.
Both parties agreed that they subsequently entered into a second contract on *820 August 14, 2012, which specified the use of a different type of shingle. Ms. Sanga testified that her roof suffered additional damage as a result of Hurricane Isaac, and began leaking. Ms. Sanga testified that following Hurricane Isaac she was unable to reach Mr. Padermo. According to her testimony, Ms. Sanga believed that Mr. Padermo was intentionally avoiding working on her roof in order to complete more lucrative jobs related to damage caused by Hurricane Isaac. Ms. Sanga testified that, in the days following Hurricane Isaac, she called Mr. Padermo “constantly.” Ms. Sanga stated that she “decide [sic] to call and keep calling, non-stop.”
On September 4, 2012, Ms. Sanga approached a company, Roofing Supply Group (“RSG”), which supplied roofing materials to Augustino Brothers Construction. Ms. Sanga requested that an RSG employee call Mr. Padermo on her behalf. The employee was told by Augustino Brothers Construction that they |4were no longer interested in working for Ms. San-ga.[2] Ms. Sanga subsequently went to Mr. Padermo’s office. According to her testimony, Mr. Padermo told her never to call him again and threatened to call the police if she returned to his office. Mr. Padermo testified that Ms. Sanga “threatened” and “cursed” him. Ms. Sanga denied threatening and “cursing” Mr. Padermo.
After Ms. Sanga’s last visit to Mr. Pad-ermo’s office, Mr. Padermo e-mailed Ms. Sanga and informed her that her “down payment” would be refunded, “minus the cancellation fee.” Both parties testified that Mr. Padermo ultimately returned a portion of Mr. Sanga’s deposit, a total of $3,743.36. However, Mr. Padermo testified that he believed that Augustino Brothers Construction earned a portion of the contract deposit as a result of work done in negotiating with Ms. Sanga’s insurance company. Ms. Sanga, on the other hand, was unhappy that she was not refunded the full amount of her deposit. As a result, Ms. Sanga testified that she contacted both the Jefferson Parish District Attorney’s Office and the Louisiana Contractors Licensing Board.
In February 2013, Mr. Padermo was arrested by the Jefferson Parish Sheriffs Office for theft and home improvement fraud in connection with his contract with Ms. Sanga. In connection with the criminal charges brought against him, Mr. Pad-ermo deposited the remainder of Ms. San-ga’s deposit, a total of $5,388.66, with the registry of the 24th Judicial District Court. On the advice of his attorney, Mr. Pader-mo pleaded guilty to misdemeanor theft. Ultimately, before the civil trial, Ms. San-ga was refunded the full amount of her deposit.
|fiOn May 7, 2013, Ms. Sanga filed a petition for damages in the 24th Judicial District Court, alleging that Mr. Padermo and Augustino Brothers Construction owed her damages for, inter alia, fraud, breach of contract, and theft. After a bench trial on the merits, the trial court found that although there was a contract between the parties in this case, “the contract never came to fruition.” The trial *821 court further found that Ms. Sanga failed to meet her burden of proof with regard to damages and therefore dismissed the matter. This timely appeal follows.
DISCUSSION
Ms. Sanga assigns five assignments of error, all of which concern the trial court’s finding that Ms. Sanga failed to meet her burden of proof at trial. A trial court’s findings of fact will not be reversed unless they are manifestly erroneous or clearly wrong. Marrero v. Daniels, 11-285 (La.App. 5 Cir. 11/29/11); 80 So.3d 612, 615. In order to reverse a trier of fact’s determinations, the appellate court must first find that a reasonable factual basis does not exist for the findings, and further it must conclude that the findings are clearly wrong. Id. When there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id. In civil suits, a plaintiff bears the burden of proving their claim by a preponderance of the evidence. Miller v. Leonard, 588 So.2d 79, 81 (La.1991). This burden means that the evidence, taken as a whole, must show that the fact or cause shown to be proven is more probable than not. State Farm Fire & Cas. Co. v. Torregano, 00-141 (La.App. 5 Cir. 09/26/00); 769 So.2d 754, 759.
In her first assignment of error, Ms. Sanga alleges that the trial court committed reversible error by failing to find the existence of a contract between the parties. However, the record reflects that the trial court did find the existence of a contract between the parties. The trial judge specifically stated during his ruling | ¿from the bench that, “it’s clear from the testimony that there was a contract between the parties, and that the contract never came to fruition.” Therefore, this assignment of error is without merit.
In her second, third, and fourth assignments of error, Ms. Sanga alleges that the trial court erred in failing to find Mr. Padermo liable for fraud and breach of contract. In order to prove fraud, the party making the allegation must prove that intent to defraud exists and that the defrauding party deliberately seeks to gain an unjust advantage or to cause loss or inconvenience to the other. La. C.C. art. 1953. “Fraud may result from misrepresentation or from silence.” Id. In pleading fraud, the circumstances constituting fraud of mistake must be alleged with particularity. La. C.C.P. art. 856. The specific intent to deceive is a necessary element of fraud, and fraud cannot be predicated upon mistake or negligence. Terrebonne Concrete, LLC v. CEC Enterprises, LLC, 11-0072 (La.App. 1 Cir. 8/17/11); 76 So.3d 502, 509, writ denied, 11-2021 (La.11/18/11); 75 So.3d 464.
As discussed above, Ms. Sanga bore the burden of proving by a preponderance of the evidence that Mr. Padermo and Augus-tino Brothers Construction committed fraud. When there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Lirette v. State Farm Ins. Co., 563 So.2d 850, 852 (La.1990). The trial court found that, with regard to Ms. Sanga’s allegations of fraud, it “did not hear enough testimony to determine whether or not that is accurate.”
In support of her allegations against Mr. Padermo, Ms. Sanga testified to her belief that Mr. Padermo deliberately lied to her about the availability of the supplies needed to complete her roof and the speed with which her roof could be |7completed. Ms. Sanga testified that Mr. Padermo lied to her about her credit score affecting the availability of the type of shingle she originally wanted for her roof. Mr. Robi- *822 cheaux confirmed that Ms. Sanga’s credit would not have affected Mr. Padermo’s ability to purchase the shingles that Ms. Sanga wanted to use on her roof. Counsel for Ms. Sanga did not ask Mr. Padermo why he withdrew from his contract with Ms. Sanga. Mr. Padermo was not questioned by either party about any of the statements he allegedly made regarding the availability of the shingle Ms. Sanga wanted. Ms. Sanga did not admit any other evidence at trial.
Based on the limited testimony presented and the lack of any additional extrinsic evidence admitted at trial, the trial court found that Ms. Sanga did not bear her burden of proof with regard to her claim for fraud. We find that under the facts and circumstances of this case, the trial court’s conclusions with regard to Ms. San-ga’s fraud claim were reasonable and not manifestly erroneous.
First, we address Ms. Sanga’s claim for breach of contract. The essential elements of a breach of contract are threefold. See Favrot v. Favrot, 10-0986 (La.App. 4 Cir. 02/09/11); 68 So.3d 1099, 1109, La. C.C. art. 1994. First, a plaintiff in a breach of contract claim must prove that the obligor undertook an obligation to perform. Id. Next, they must prove that the obligor failed to perform the obligation, resulting in a breach. Id. Finally, the failure to perform must result in damages to the obligee. Id. Generally, the damages in breach of contract cases are governed by the four corners of the contract. Corbello v. Iowa Prod., 02-0826 (La.02/25/03); 850 So.2d 686, 714. The trial court found that Ms. Sanga failed to meet her burden of proof with regard to her damages for Mr. Padermo’s failure to perform his obligation.[3]
|sIn support of her allegation of breach of contract, Ms. Sanga offered her own testimony as described above. Ms. Sanga alleged that as a result of her dispute with Mr. Padermo and Augustino Brothers Construction, she was forced to borrow money in order to replace her roof until Augustino Brothers Construction refunded her deposit. Ms. Sanga also testified that her homeowner’s insurance rates increased because of her failure to replace her roof within a certain period of time. Ms. Sanga also complained that she ultimately spent more on her roof replacement than Mr. Padermo initially quoted her. Ms. Sanga did not admit any evidence in support of these allegations beyond her own testimony. Neither of the two contracts at issue in this case was admitted into evidence. Furthermore, .no testimony was elicited from Mr. Padermo with regard to his reasons for withdrawing from the contract with Ms. Sanga.
As discussed above, proof of damages is an essential element to a breach of contract claim. Ms. Sanga explicitly testified that Mr. Padermo ultimately refunded her the full amount of her deposit. Moreover, Ms. Sanga admitted no evidence beyond her own testimony in order to prove her financial damages. Based on the evidence admitted at trial, we find that the trial court was not manifestly erroneous in finding that Ms. Sanga failed to meet her burden of proof with regard to damages as to her breach of contract claim. For the foregoing reasons, these assignments of error are without merit.
*823 Finally, Ms. Sanga alleges that the trial court erred in failing to find Mr. Padermo liable for her mental anguish, embarrassment, and inconvenience. Ms. Sanga testified that as a result of Mr. Padermo’s actions, she was “mad” and “devastated” because her contract with Augustino Brothers Construction failed to come to fruition. According to her testimony, Ms. Sanga. was particularly upset Iflbecause Augustino Brothers Construction began advertising in her neighborhood during her dispute with Mr. Padermo.
The trial court found that Ms. San-ga’s testimony with regard to her emotional state did not rise to “a level of compen-sable damages.” As discussed above,“reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review.” Lirette, supra. Mental anguish is defined as “a highly unpleasant mental reaction (such as anguish, grief, fright, humiliation, or fury) that results from another person’s conduct; emotional pain and suffering.” Black’s Law Dictionary (9th ed. 2009), Shubert v. Tonti Dev. Corp., 09-348 (La.App. 5 Cir. 12/29/09); 30 So.3d 977, 987. In this case, we find that the trial court’s evaluation of Ms. Sanga’s testimony, and its finding that Ms. Sanga failed to meet her burden of proof with regard to her mental anguish claim, was not manifestly erroneous. Therefore, we find that the trial court did not err in failing to award Ms. Sanga damages for mental anguish, embarrassment, and inconvenience.
CONCLUSION
For the foregoing reasons, we find that the trial court did not err in finding that Ms. Sanga failed to meet her burden of proof with regard to her claims against Augustino Brothers Construction and Mr. Padermo. Accordingly, the trial court’s judgment dismissing Ms. Sanga’s claims is hereby affirmed.

AFFIRMED

. Three witnesses testified at trial: Ms. San-ga, Mr. Padermo, and Brian Robicheaux, an employee at Roofing Supply Group.

. Brian Robicheaux, a sales manager for RSG, testified at trial. According to his testimony, Mr. Padermo contacted RSG to place an order for the shingles that Ms. Sanga wanted to use on her roof. Mr. Robicheaux testified that the type of shingle Ms. Sanga wanted was a "special order” which needed to be placed directly with the manufacturer. Mr. Robicheaux testified that the order was never finalized because Ms. Sanga would have needed to pay for the shingles in full prior to placing the order with the manufacturer. Mr. Robicheaux testified that he provided Mr. Padermo with a quote for the cost of the shingles. Mr. Robicheaux testified that Ms. Sanga’s credit would not have been relevant to Mr. Padermo’s ability to obtain the shingles.

. Ms. Sanga also alleges, as a separate assignment of error, that the trial court erred in failing to find that she suffered economic damages. This assignment of error is logically subsumed by the question of whether Ms. Sanga adequately carried her burden of proof with regard to damages in her breach of contract claim.