MARC E. JOHNSON JUDGE
| í Defendants/Appellants, Crescent City Cleaning Services, Inc.,[1] Elaine Hurst and Bridget Faucheux (hereinafter collectively referred to as “Crescent City”) appeal the judgment rendered in favor of Plaintiff/Ap-pellee, Charles Emile Bruneau, Jr., awarding damages for a breach of contract in First Parish Court for the Parish of Jefferson, Section “A”. For the following reasons, we reverse the judgment.
FACTS AND PROCEDURAL HISTORY
In 2007, Mr. Bruneau hired Crescent City to provide private housekeeping services for his home located in New Orleans, Louisiana. During its employment, Crescent City was provided a key to Mr. Bru-neau’s home and the code to his home alarm system in furtherance of the verbal employment agreement between the parties. The key also unlocked the door to an interior closet room, which contained a safe where Mr. Bruneau kept money and other valuables. Crescent City remained employed with Mr. Bruneau for the following three years.
On April 29, 2010, Elaine Hurst and Bridget Faucheux, the owners of Crescent City, were cleaning Mr. Bruneau’s home. On that particular day, Gus Hurst[2], Ms. Hurst’s son, assisted with the service. While assisting with the housekeeping services, Gus attempted to open an interior closet door, where Mr. Bruneau’s safe was located, but was informed by Ms. Fau-cheux that the company did not clean that area. At that time, Mr. Bruneau kept the combination to the safe in a metal eyeglasses case in a bedroom dresser drawer.
On May 2, 2010, three days after Crescent City’s housekeeping services were performed, Mr. Bruneau’s home was burglarized at approximately 3:27p.m. |aThe back door to Mr. Bruneau’s home was kicked in, and an envelope containing $8,500 in cash, a safe deposit key, a Certificate of Deposit and a testamentary will were stolen from the safe located in the interior closet.[3] Following the burglary, Detective Michael Sam of the New Orleans Police Department investigated the burglary and discovered that Gus had been in the home only a few days prior to the *289 burglary. Det. Sam applied for a search warrant in Orleans Parish for Gus; however, it was denied for lack of probable cause. Gus was never arrested for the burglary of Mr. Bruneau’s home, and no other suspect was investigated by the New Orleans Police Department for the burglary.
Subsequently, Mr. Bruneau filed a “Petition for Damages and Breach of Contract” against Crescent City, Ms. Hurst, Ms. Faucheux and Gus, mainly alleging that Crescent City breached its contract with him by allowing a person with an extensive criminal record, Gus, to enter his home without prior approval. Mr. Bruneau also alleged, among other allegations, that Ms. Hurst, Ms. Faucheux and Gus were individually liable for the damages he incurred as a result of the burglary. Crescent City answered Mr. Bruneau’s petition and filed a reconventional demand, alleging that Mr. Bruneau took certain actions that constituted slander, defamation and libel.
The matter proceeded to trial on March 9, 2015, and the case was taken under advisement by the trial court.[4] On April 16, 2015, the trial court rendered a judgment that found Mr. Bruneau established by a preponderance of the evidence that the defendants breached their contractual agreement to provide cleaning services by allowing an individual with a criminal history access to Mr. Bruneau’s home, and the evidence supported the claim that it was more likely than not that Gus facilitated the unauthorized access to the home. Mr. Bruneau was awarded | ¡¡$8,300 for loss of property; however, his claim for an upgraded alarm system was found to be unrecoverable. The trial court further found there was insufficient evidence to support Crescent City’s reconventional demand and dismissed its claims. The judgment was amended on June 23, 2015 to reflect that ■ the judgment was against Crescent City, Ms. Hurst and Ms. Fau-cheux. The instant appeal followed.
ASSIGNMENTS OF ERROR
On appeal, Crescent City alleges the trial court abused its discretion by: 1) finding the company breached its contract to provide cleaning services to Mr. Bru-neau; 2) finding Ms. Hurst and Ms. Fau-cheux were personally liable for the burglary and piercing the corporate veil; and 3) failing to require Mr. Bruneau to offer any proof of damages.
LAW AND ANALYSIS
Breach of Contract
Crescent City alleges the trial court abused its discretion in finding that it breached its contract with Mr. Bruneau. It argues that Mr. Bruneau failed to present any corroborating evidence that the contract for housekeeping services excluded anyone with a criminal record from entering his home. Crescent City contends that Mr. Bruneau’s testimony that only “one type” of person was prohibited from entering his home was not sufficient evidence to prove that it breached a clause in then-oral contract. Crescent City further contends that Mr. Bruneau failed to prove that Gus burglarized his home or gained unauthorized access. Crescent City also argues that, assuming arguendo that Gus committed the burglary, it is not vicariously liable for his intentional act.
Conversely, Mr. Bruneau avers the trial court properly concluded that Crescent City breached its contract to provide cleaning services by allowing an individual with a criminal history to access his home. He asserts that he hired UCrescent City partly based upon its pamphlet, which *290 stated the company was comprised of honest, hardworking people. By not disclosing that Gus had a criminal background, Mr. Bruneau contends that Crescent City breached its contract because he was denied the opportunity to determine if he was comfortable with allowing a person previously convicted of burglary into his home to clean. He further asserts that sufficient evidence was presented to establish by a preponderance of the evidence that Gus facilitated unauthorized access to his home, and that Crescent City breached its contract.
Before addressing Mr. Bruneau’s breach of contract claim, we first note that, according to the language in the judgment, Mr. Bruneau was awarded damages against Crescent City for breach of contract. Although Crescent City argues in its brief that the trial court found it to be vicariously hable, it is clear that the judgment did not award damages under the theory of vicarious liability. Thus, we will not address vicarious liability against Crescent City.
In his petition, Mr. Bruneau alleged Crescent City’s action constituted a breach of its contract with him by: allowing an unauthorized person to enter his dwelling without his knowledge or consent; aiding and abetting a person with a record of arrest for the crime of burglary to enter his home in violation of its published policy to employ “honest” people; failing to properly supervise its employee; failing to obtain permission for a person, other than one of the two directors, be allowed to enter his dwelling; failing to notify him of the presence of Gus on his premises on April 29, 2010; acting in concert with Gus to deceive him and failing to disclose Gus’s criminal record; and condoning a trespass and/or unauthorized entry upon his premises. In its judgment, the trial court found that Mr. Bruneau established by a preponderance of the evidence that Crescent City breached its contractual agreement to pi-o-vide cleaning services by allowing an individual with a criminal history access to Mr. Bruneau’s home. The trial court | sfurther found that the evidence supported Mr. Bruneau’s claim that Gus more likely than not facilitated the unauthorized access to the home and awarded $8,300 in damages for loss of property.
The essential elements of a breach of contract are threefold. Sanga v. Perdomo, 14-609 (La.App. 5 Cir. 12/30/14); 167 So.3d 818, 822, writ denied, 15-222 (La. 6/19/15); 172 So.3d 650, citing Favrot v. Favrot, 10-986 (La. App. 4 Cir. 2/9/11); 68 So.3d 1099, 1108-09. First, a plaintiff in a breach of contract claim must prove the obligor undertook an obligation to perform. Id. Next, the plaintiff must prove that the obligor failed to perform the obli gation, resulting in a breach. Id. Finally, the failure to perform must result in damages to the obligee. Id. As the aggrieved party, the plaintiff bears the burden of proving these elements by a preponderance of the evidence. See, Hayes Fund for the First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mt., LLC, 14-2592 (La. 12/8/15); 193 So.3d 1110, 1115. Whether a defendant’s actions caused the plaintiffs damages is a question of fact, which should not be reversed on appeal absent manifest error. Id.
In an action to recover damages for breach of contract, a plaintiff must prove his case by a preponderance of the evidence, either direct or circumstantial. Sullivan v. City of Baton Rouge, 14-964 (La. App. 1 Cir. 1/27/15); 170 So.3d 186, 202. Proof is sufficient to constitute a preponderance when the entirety of the evidence, both direct and circumstantial, shows the fact sought to be proved is more probable than not. Id. A fact established by direct evidence is one which has been *291 testified to by witnesses as having come under the cognizance of their senses. Id, Circumstantial evidence, on the other hand, is evidence of one fact, or of a set of facts, from which the existence of the fact to be determined may reasonably be inferred. Id.
|ñThe parties in this matter did not have a written contract for services. La. C.C. art. 1846 provides that an oral contract in excess of $500 must be proven by, at least, one credible witness and other corroborating evidence. Only general corroboration is required, and it is not necessary for the plaintiff to offer independent proof of every detail. DBR Assocs., L.L.C. v. Burnell, 15-629 (La.App. 5 Cir. 2/24/16); 186 So.3d 1225, 1230. The existence or nonexistence of a contract is a finding of fact that will not be disturbed unless it is clearly wrong. Id. The manifest error or clearly wrong standard of review applies when factual findings are relevant to the interpretation of a contract. Id.
At trial, the testimonies of Mr. Bruneau, Ms. Hurst and Ms. Faucheux established that there was an oral contract between Mr. Bruneau and Crescent City for housekeeping services, and that Mr. Bruneau had given Crescent City a restriction on who was allowed in his home. Mr. Bruneau testified that, prior to engaging in business with Crescent City, Ms. Fau-cheux provided him with a pamphlet for the company stating that the employees were honest, hard-working people, and he had no reason at that time to believe the statement was false. To corroborate his claim, a pamphlet for Crescent City was admitted into evidence that specifically stated, “Crescent City Cleaning is a reliable maid service comprised of honest, hard-working individuals. Our reputation for doing an excellent job coincides with our reputation for honesty, integrity and reliability.” (Emphasis in original). The pamphlet also stated that its clients could “leave many valuables in their homes and know that each and every item will be there when they arrive home.” Mr. Bru-neau further testified that he never met Gus, was not informed of Gus’s criminal history, and did not consent to Gus being in his home. Ms. Hurst testified that Mr. Bruneau told them not to bring “one type of person” into his home. Ms. Hurst and Ms. Faucheux both testified that they did not relay to Mr. Bruneau that Gus had a criminal history prior to having him assist with the ^housekeeping services on April 29th. Considering this evidence, we find that Mr. Bruneau proved by a preponderance of the evidence that: 1) Crescent City contracted with Mr. Bruneau to perform its housekeeping services without allowing criminals in his home, and 2) Crescent City failed to uphold its obligation by allowing Gus into the home on April 29, 2010, while the housekeeping services were being performed.
At the lower court, Mr, Bruneau claimed that Crescent City’s breach of contract caused him mental distress and monetary losses, and he presented evidence through testimony and documentation in support of his claims. All of Mr. Bruneau’s damages originate from the May 2, 2010 burglary. The trial court awarded $8,300 to Mr. Bruneau for loss of property but did not compensate him for mental distress.[5] While Mr. Bruneau successfully proved that Crescent City failed to uphold its obligation on April 29, 2010, in order for him to prove by a preponderance of the evidence that Crescent City’s actions caused his loss of $8,500 in damages, he also had to present evidence that it was more likely than not that Gus entered his *292 home on May 2, 2010 and was involved in the commission of the burglary.
During trial, Det. Sam testified that upon his entrance into the residence, he found that the back door was damaged, seemingly kicked in during the burglary. Once inside of the residence, he noticed there was an opened hallway closet door that contained a safe. The safe was also opened and appeared to have some contents removed, while other items remained undisturbed.[6] One thing that stood out to Det. Sam was that Mr. Bruneau’s firearm and ammunition were not taken, as it was his opinion that “normal” burglars always take firearms. Det. Sam stated that Mr¡ Bruneau’s combination to his safe was located in an eyeglasses case inside of ;a | ^bedroom drawer.[7] The remainder of the home had not been disturbed and appeared to be in pristine condition.
The crime lab dusted for prints and found footprints on the exterior of- the back door and fingerprints on the outside of the closet door to where the safe was located. There were no other prints found anywhere in the house.[8] Det. Sam testified that Gus’s fingerprints were found on the closet door, and those were the only prints identified in the investigation.[9],[10]
At the conclusion of Det. Sam’s investigation, he surmised that Gus was a suspect because he had a criminal history. Det. Sam applied for a criminal arrest warrant, but the warrant was not granted because it was found to lack sufficient probable cause. Although Det. Sam also was unable to obtain a search warrant for Gus’s residence, he was able to perform a search of the residence with the assistance of Gus’s parole officer. The search of the residence failed to yield any evidence against Gus in the commission of the burglary of Mr. Bruneau’s home.
Ms. Faucheux testified that, on the day in question, Gus accompanied her and Ms. Hurst to Mr. Bruneau’s home to perform housekeeping services. She stated that she personally cleaned Mr. Bruneau’s bedroom. Ms. Faucheux attested that Gus was not allowed to enter the bedroom and was supervised the entire time he was there. Ms. Hurst also testified that' Gus was supervised while he was in Mr. Bruneau’s residence. She stated that, although Gus had a criminal history, he had been through the rehabilitation process, and she thought Gus was a person of integrity and honesty at the time he assisted with the housekeeping services. Ms. [aHurst further testified that Gus did not have access to any of the keys for the homes Orescent City serviced.
While Gus’s criminal history casts an eye of suspicion upon him, the evidence does not support the trial court’s determination that he more likely than not facilitated the unauthorized access to Mr. Bruneau’s home. The facts that Gus is a *293 convicted felon and had been in Mr. Bru-neau’s home on April 29th are not sufficient to prove that Gus more likely than not was involved in the commission of the burglary on May 2nd. Thus, Mr. Bruneau failed to prove by a preponderance of the evidence that Crescent City’s actions caused him any damages, which is the last element required to prove a breach of contract claim. See, Sanga, supra.
Therefore, we find the trial court was manifestly erroneous in finding that Mr. Bruneau proved by a preponderance of the evidence that Crescent City breached its contract, Gus more likely than not facilitated the unauthorized access to Mr. Bru-neau’s home, and Mr. Bruneau was entitled to damages. Because we find that Mr. Bruneau failed to prove his breach of contract claim by a preponderance of the evidence, we also find the trial court was manifestly erroneous in finding that Elaine Hurst and Bridget Faucheux were personally liable for Crescent City’s alleged breach.
DECREE
For the foregoing reasons, we reverse the June 23, 2015 judgment of the trial court that found Crescent City Cleaning Services, Inc., Elaine Hurst and Bridget Faucheux liable for an alleged breach of contract with Charles Emile Bruneau, Jr.
REYERSED

. Although "Crescent City Cleaning Services Corporation” is used in the caption of this case, the judgment at issue lists the company as "Crescent City Cleaning Services, Inc.”

. The evidence regarding Gus’s criminal history showed that Gus has been convicted of several offenses, including simple criminal damage to property under $500 and simple burglary of a vehicle.

.Valuable jewelry, an antique pistol, and a set of flatware for twelve were also contained in the safe at the time of the burglary; however, those items were not stolen.

. Gus was not served with the lawsuit; thus, he was not involved in the proceedings.

. Mr. Bruneau did not appeal the trial court’s denial of his mental distress claim.

. Det. Sam'mentioned that there was silverware, jewelry, and "plenty of other valuables inside of that safe.”

. Det. Sam also testified that the drawer containing the safe combination and the eyeglasses case were undisturbed, which indicated the combination was not used in the incident because the crime had to have been committed in a hasty manner.

. Specifically, there were no prints found on any of the door handles, the locking devices for the doors, the safe or the envelopes in the safe that contained the stolen cash.

. Det. Sam was unable to match the footprints found at the scene ,to Gus.

. When questioned about Gus’s fingerprints on the hallway door, Mr. Bruneau stated, "That was from a different time. That’s when he was there to clean — allegedly clean the house.,..”