STUART SERVICES, L.L.C.

VERSUS

NASH HEATING & AIR CONDITIONING,
INC. AND RONNIE CAMET

NO. 22-CA-105

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 707-856, DIVISION "G"
HONORABLE E. ADRIAN ADAMS, JUDGE PRESIDING


December 07, 2022


**JOHN J. MOLAISON, JR.**
**JUDGE**


Panel composed of Judges Fredericka Homberg Wicker,
Robert A. Chaisson, and John J. Molaison, Jr.


**AMENDED; AFFIRMED AS AMENDED; REMANDED**
    **JJM**
    **FHW**
    **RAC**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
STUART SERVICES, LLC
 Raymond B. Landry
 John F. Lee
 Thomas M. Flanagan
 Camille E. Gauthier
 Alixe Duplechain
 Leonard L. Levenson
 Christian W. Helmke
 Colleen B. Gannon
 Donna R. Barrios

COUNSEL FOR DEFENDANT/APPELLEE,
RONNIE CAMET
 T. Randolph Richardson
 Thomas J. Barbera

**MOLAISON, J.**

Appellant, Stuart Services, L.L.C, seeks review of the trial court's judgment which declined to award damages resulting from the breach of an employment agreement, and further awarded costs and attorneys' fees to the appellee, Ronnie Camet. Mr. Camet has filed an answer and seeks additional attorneys' fees incurred in connection with the appeal as well as the trial court proceedings. For the reasons that follow, the judgment of the trial court is amended in part and affirmed as amended. Mr. Camet's answer to the appeal is granted, in part. We further remand the matter for additional proceedings related to the calculation of Mr. Camet's attorneys' fees.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY

On February 8, 2008, Mr. Camet sold the "goodwill," client list,[1] and the name of his business, "R.C. Camet Air Conditioning" to Stuart Services, L.L.C ("Stuart") for the sum of $60,000. In tandem with the sale, Mr. Camet entered into an employment agreement with Stuart which provided, in relevant parts, that Mr. Camet would become an employee for Stuart and his duties would fall "primarily in the capacity of a salesperson," and that he would also serve as a liaison between his former customers and Stuart. The term for the employment agreement specified that it would be effective from January 1, 2008 until December 31, 2009, unless sooner terminated. The agreement also specified that Mr. Camet could not engage in a business similar to Stuart, and could not solicit Stuart's customers, for a period of two years following his termination. Mr. Camet subsequently worked for Stuart until November 1, 2009. After leaving employment there, Mr. Camet unsuccessfully sought to negotiate a change in terms of the noncompetition

---

[1] While the agreement refers to a "client list" generically, no specific clients of Mr. Camet's former business were named.

agreement. In February, 2010, Mr. Camet began working for Nash Heating & Air Conditioning, ("Nash").

On October 31, 2011, Stuart filed a petition for damages at the Twenty-Fourth Judicial District Court which alleged that Mr. Camet had violated the non-competition term of their employment agreement when he accepted a position with Nash, which was engaged in a similar business as Stuart.[2] The petition also alleged that Mr. Camet had actively pursued, within an unidentified time frame, three of his former accounts[3] and took their business away from Stuart, in violation of the Louisiana Unfair Trade Practices Act.

On February 23, 2014, Stuart filed a motion for partial summary judgment on the issue of whether Mr. Camet had breached the 2008 employment agreement. On June 19, 2014, the trial court granted Stuart's motion for partial summary judgment and found that Mr. Camet had failed to fulfill his obligations under the employment agreement with Stuart.[4] In the same order, the trial court provided that "the issue of the damages for which Camet is liable to Stuart is reserved for future resolution."[5]

A judge trial on the issue of damages was eventually held on March 1 and 3, 2021. In its judgment dated April 23, 2021, the trial court ruled in favor of Mr.

---

[2] Stuart's petition alleged that Mr. Camet and Nash were liable for damages *in solido*; however, Nash was dismissed from the lawsuit pursuant to a joint motion granted on March 18, 2014.

[3] The accounts identified by name in Stuart's petition for damages were the St. Ann School and Church, the St. Clement of Rome School and Church, and Guaranty Savings Bank.

[4] The trial court specifically found that Mr. Camet "breached the employment agreement" but reserved the issue of damages for future trial. As explained in the 1984 Revision Comments to Louisiana Civil Code Article 1994 cited infra, the word "breach" was replaced by "failure to perform". As explained by Litanoff in the Louisiana Civil Law Treatise, the term "breach" was deliberately removed from the Civil Code during the 1984 revisions; "…the expression defective performance, rather than breach of one kind or another, conveys with greater clarity the idea of a performance rendered in an unsatisfactory manner." (Emphasis original.) The Law of Obligations: Putting in Default and Damages, 2.18. With this in mind, we endeavor in this opinion to use the correct terminology while still recognizing the merits of parties' arguments.

[5] It does not appear that either Mr. Camet or Nash sought review of the trial court's ruling on the motion for partial summary judgment at that time.

Camet, and dismissed all of Stuart's claims against him with prejudice. The trial court further indicated that pursuant to "Provision 5.4 of the Employment Agreement and Provision 6.8 of the Sales Agreement," Mr. Camet, as the prevailing party, was entitled to collect reasonable expenses and attorneys' fees.

Mr. Camet's motion to tax costs and expenses was heard on August 13, 2021, and, on September 27, 2021, the trial court awarded Mr. Camet $3,873.60 in costs, in addition to $86,536.75 in attorneys' fees. This appeal by Stuart followed. Mr. Camet has answered the appeal and requests attorneys' fees incurred in connection with his opposition to Stuart's appeal and his motion to tax costs, as well as additional costs not awarded by the trial court.

## ASSIGMENTS OF ERROR

1. The district court erred in admitting a hearsay letter into evidence under the business records exception; that letter was not properly authenticated as a business record of either the author or recipient.

2. The district court erred in dismissing Stuart's claims and finding that it suffered no damages as a result of Camet's breach of the noncompetition provision.

3. The district court erred in allowing Camet, who breached the employment agreement, to enforce the contract and collect attorney's fees and costs, including those incurred for issues on which Camet lost.

## LAW AND ANALYSIS

## ASSIGNMENT OF ERROR ONE

In its first assignment of error, Stuart asserts that that trial court erred in admitting one of Mr. Camet's exhibits[6] into evidence at trial, a letter from Francis Minor, a former business manager for St. Clement of Rome, which purportedly explains why St. Clement no longer did business with Stuart.[7] At trial, Stuart

---

[6] The exhibit at issue is identified as "Defense Exhibit-11." The record shows that Mr. Camet initially identified the letter as "Exhibit 13" in the joint pre-trial order filed by the parties on February 22, 2021.

[7] Among the reasons provided by the author of the letter were Stuart's billing errors and Stuart's rates being higher than those of competitors.

timely objected to the letter as hearsay. Counsel for Mr. Camet argued that the letter was admissible under the business records exception, and Mr. Camet testified that he kept correspondence from his former customers even after he sold his business to Stuart. The trial court ultimately found the letter admissible under the business records exception. While we agree with the appellant that the document was hearsay that did not fit the parameters of the business document exception defined in La. C.E. art. 803(6), for the reasons discussed more fully below we do not find that the admission of the document constitutes reversible error.

La. C.E. art. 103 provides that "[E]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." In this case the court had the benefit of Mr. Camet's and Mr. Nash's trial testimony to demonstrate why St. Clement decided to no longer use Stuart and the circumstances through which Nash was hired by St. Clement. Specifically, Mr. Camet testified as to his understanding that St. Clement objected to being required to pay a one-half deposit prior to the work being done. Mr. Nash testified that he and his family had been parishioners at St. Clement's church for some time and that he and his wife were active in the parish. Mr. Nash stated that he was contacted by Mr. Minor directly and asked to give an estimate on replacing some equipment.

In light of the other evidence presented by Mr. Camet at trial, we cannot say that the admission of the letter substantially affected Stuart's rights.[8] Accordingly, we find the trial court's error to be harmless in this case and the assignment of error to be without merit.

---

[8] In its reasons for judgment, the trial court refers only to the testimony of Mr. Camet and Mr. Nash, but not Mr. Minor, with regard to the St. Clement's account.

**ASSIGNMENT OF ERROR TWO**

In its second assignment of error, Stuart contends that the trial court erred in finding that it suffered no damages as a result of Camet's breach of the noncompetition provision of the employment contract, or, in other words as pointed out above, Camet's failure to fulfill his obligation not to compete under the employment agreement.

The relevant provision of the employment contract between the parties contained both a non-compete and a non-solicitation clause. It states:

> The Employee, including any members of his immediate family, shall refrain - both directly and indirectly- from carrying on or engaging in a business similar to Stuart Services, LLC or R.C. Camet Air Conditioning & Heating, Inc. and/or from soliciting customers of those businesses.

Pursuant to this language, Mr. Camet had two obligations: to not compete with Stuart by going to work for a competitor *and* to not solicit customers from Stuart. This Court has previously acknowledged that non-competition agreements are separate and distinct from non-solicitation agreements. *Wechem, Inc. v. Evans*, 18-743 (La. App. 5 Cir. 5/30/19), 274 So.3d 877, 885, *writ denied*, 19-01176 (La. 10/15/19), 280 So.3d 600. The record shows that when Stuart sought a motion for partial summary judgment on the issue of Mr. Camet's breach of contract, it was based on the "non-compete provision" of the employment contract, with the specific allegation that:

> Camet left Stuart's employ, triggering the two-year period in the Employment Agreement's non-compete provision. Shortly into that two-year period, Camet became employed by defendant Nash Heating & Air Conditioning, Inc. ("Nash"). Nash was and is a competitor of Stuart, doing business in several of the same parishes. As such, Camet violated the non-compete provision of the Employment Agreement and, therefore, breached the Employment Agreement.

The parties do not contest that Mr. Camet worked for Nash, a competitor, within the two-year time period specified in the employment agreement in

violation of the non-competition clause. However, Stuart's allegations that Mr. Camet diverted its clients, resulting in lost profits, would fall under the non-solicitation portion of the employment agreement. There was no finding by the trial court in the June 19, 2014 judgment that Mr. Camet had solicited Stuart's clients. The issue of damages at the recent trial was based solely on damages resulting from the non-compete clause. It is evident, however, that the trial court necessarily analyzed the acts of alleged solicitation of Stuart's clients to determine whether Mr. Camet had caused economic injury to Stuart during his employment with Nash. The trial court further made a determination that because Mr. Camet did not solicit Stuart's clients, his breach of the non-competition clause of the employment agreement, without more, did not result in compensable damages to Stuart.[9] We find no conflict in the rulings that found a breach by Mr. Camet in joining a competing business, but did not find that the specific accounts identified by Stuart were solicited to Nash by Mr. Camet, resulting in a monetary loss to Stuart. As will be discussed more fully below, causation is an essential element for a party seeking to recover damages due to an obligor's failure to perform.

### The non-competition agreement

A non-competition agreement is a contract between the parties who enter it, and it is to be construed according to the general rules of contract interpretation. *17 SWAT 24 Shreveport Bossier, Inc. v. Bond*, 00-1695 (La. 6/29/01), 808 So.2d 294 (*superseded by statute on other grounds)*; *ADVANCED MEDICAL REHAB, L.L.C. V. SHELBY MANTON*, 21-315 (La. App. 5 Cir. 2/23/22), *reh'g denied* (Mar. 10,

---

[9] The trial court stated in its reasons for judgment that it had found guidance on this issue from *Smith v. Conam Inspection & Eng'g Servs., Inc.*, 14-0161 (La. App. 1 Cir. 12/10/14) (unpublished opinion):

> This Court finds that the case currently before the Court is akin to *Smith.* In this case, although this Court has previously determined that Mr. Camet did in fact breach the Employment Agreement that he and the plaintiff executed; this Court maintains that that the plaintiff has failed to establish how Mr. Camet's breach was the cause of several customers leaving Stuart Services, L.L.C., and going to Nash Heating & Air Conditioning, Inc.

2022), *writ denied sub nom. Advanced Med. Rehab, L.L.C. v. Manton*, 22-00606 (La. 6/1/22), 338 So.3d 494.

Under La. C.C. art. 1994, an obligor is liable for damages caused by his failure to perform a conventional obligation. The failure to perform may result from nonperformance, defective performance, or delay in performance. Courts have interpreted this to mean that there are three essential elements of a breach of contract claim. *Sanga v. Perdomo*, 14-609 (La. App. 5 Cir. 12/30/14), 167 So.3d 818, 822, *writ not considered*, 15-0222 (La. 4/17/15), 176 So.3d 1032, *and writ denied*, 15-0222 (La. 6/19/15), 172 So.3d 650; La. C.C. art. 1994. First, a plaintiff must prove that the obligor undertook an obligation to perform. *Id*. Next, they must prove that the obligor failed to perform the obligation. *Id*. Finally, the failure to perform must result in damages to the obligee. *Id*.

In the instant case, the trial court in its reasons for judgment[10] considered whether or not the plaintiff, Stuart Services, L.L.C., is entitled to damages for Mr. Camet's failure to fulfill his obligation not to compete with Stuart. Specifically, Stuart sought to recover damages in the form of profits lost after clients left Stuart. In finding that Mr. Camet did not cause Stuart's damages, the court referenced several key pieces of evidence in the record.

First, the court observed that Mr. Camet had not made a guarantee at the time of sale that any of his past customers would remain current customers of Stuart. Nevertheless, all three of the accounts named by Stuart in its petition for damages did, in fact, become Stuart customers at the time that Mr. Camet started

---

[10] Appellate courts do not review reasons for judgment as a part of the judgment itself. La. C.C.P. art. 1918; *Burmaster v. Plaquemines Parish Government*, 07-1311 (La. 8/31/07), 963 So.2d 378, 379. The written reasons for judgment are merely an explication of the trial court's determinations. *State in the Interest of Mason*, 356 So.2d 530, 532 (La. App. 1 Cir. 1977). The Louisiana Supreme Court has held, however, that a court of appeal can use reasons for judgment to gain insight into the district court's judgment, and we refer to them now for that purpose. *See, Wooley v. Lucksinger*, 09-0571 (La. 4/1/11), 61 So.3d 507.

his employment there. However, as correctly noted by the trial court, after the sale all three accounts decided to no longer use Stuart for various reasons.

The evidence adduced at trial demonstrated through the testimony of former Executive Vice President Bruce Scott that, in 2010, Guaranty Bank chose not to renew its contract with Stuart based upon poor workmanship and inadequate response times to requests for service. Mr. Scott's testimony was that Mr. Camet did not ask him to change from Stuart Services. Mr. Scott also testified that it was his wife's suggestion to use Nash, as the owner was a personal family acquaintance.

The evidence regarding St. Clement's account was previously discussed. Concerning the St. Ann account, Mr. Nash testified that he obtained the St. Ann account after he received a phone call to meet with a Deacon[11] to start doing service and maintenance on the property. Further, Mr. Nash contended that St. Ann was referred to Nash Heating & Air Conditioning, Inc., by St. Clement. Additionally, Ronda D' Anna Mendel, Stuart Services' former Administrative Assistant, testified at trial that St. Ann terminated Stuart because it was unhappy with the services that Stuart provided.

In its reasons for judgment, the trial court stated that it found that the witnesses were credible and truthful in their accounts of the events that led to each eventually refusing to no longer use Stuart to service its units. When the factual findings are based on the credibility of a witness's testimony, the appellate court must give great deference to the fact finder's decision to credit a witness's

---

[11] The deposition of Deacon Raymond Bertin, the facility manager for St. Ann Church and School was also entered into evidence at trial on March 1, 2021, and accepted by the trial court on joint stipulation of the parties as Exhibit D-57. Mr. Bertin explained in his deposition that St. Ann entered into a yearly contract with Stuart through Mr. Camet. St. Ann became discontent with Stuart because a different serviceman came out on every call, which meant that St. Ann had to show the layout and function of the units each time, which resulted in an additional cost. Mr. Bertin stated that the decision to terminate Stuart was made by him, the pastor, and the school principal. St. Ann chose Nash as a replacement based on information provided by Mr. Minor at St. Clement of Rome. Mr. Bertin testified that Mr. Camet did not divert St. Ann's business to Nash.

testimony. *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). The trial court also found it significant that Mr. Camet continued his employment with Stuart after the three clients had stopped using Stuart's services. Finally, the court observed that Stuart produced no evidence that Mr. Camet had directed these accounts to Nash during his employment there, or at any time thereafter. Accordingly, the trial court found that Stuart failed to satisfy the essential element of causation and/or connectivity to its alleged lost profits.[12]

A trial court's factual findings are subject to the manifest error standard of review. *Brooks v. Union Pacific R. Co*., 08-2035 (La. 5/22/09), 13 So.3d 546, 554. Subject to the manifest error standard, its factual findings can only be reversed upon finding, based on the entire record, no reasonable factual basis for its findings and that the factfinder is wrong. *Stobart v. State, through Department of Transp. and Development*, 617 So.2d 880, 882 (La. 1993). After our review of the record, we find that a factual basis exists to support the trial court's ruling regarding causation and damages in this matter. Accordingly, we find this assignment to be without merit.

## ASSIGNMENT OF ERROR THREE

In its final assignment of error, Stuart contends that the district court erred in allowing Mr. Camet to enforce the contract and collect attorneys' fees and costs even though he was found to be in "breach" of the employment agreement or that he failed to perform his obligations under the employment agreement.

Section 5.4 of the employment agreement, and Section 6.8 of the sales agreement both state, in relevant part, "If any litigation or dispute occurs arising

---

[12] With respect to Stuart's alleged lost profits, the trial court opined that, [d]uring trial, the plaintiff submitted thousands of pages of exhibits into the record seeking to establish the amount of damages, in the full sum of $358,513.36, that Mr. Camet is responsible for; however, the testimony elicited at trial does not corroborate the plaintiff's position." The trial court also acknowledged Mr. Camet's argument "that there were several contributing factors that led to the decline in Stuart's business and ultimately the gross margins, including: poor customer service, The Great Recession of 2008, and internal financial problems."

out of or connected in any way with this Agreement or its underlying terms, the prevailing party shall be entitled to reasonable expenses and attorney's fees…" In *Peyton Place, Condo. Assocs., Inc. v. Guastella*, 08-365 (La. App. 5 Cir. 5/29/09), 18 So.3d 132, 147, this Court previously referred to the definition of "prevailing party" as articulated by the U.S. Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In *Hensley*, the Supreme Court opined that a "typical formulation [of the prevailing party standard] is that 'plaintiffs may be considered prevailing parties for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." As found by the trial court in its February 23, 2014 order that granted Stuart's motion for partial summary judgment, Stuart did establish that Mr. Camet failed to perform his obligation not to compete under the employment agreement. However, this was only one of three elements necessary to establish a breach of contract by Mr. Camet. To prevail on the claims alleged in its petition, Stuart needed to prove damages caused by Mr. Camet's failure to perform. For the reasons stated above, Stuart did not establish this necessary element of its claim, and therefore did not successfully prove the entirety of its case. Accordingly, we decline to adopt Stuart's contention that it was the prevailing party in this matter. All claims against Mr. Camet were dismissed by the trial court.

In the alternative, Stuart disputes the amount of attorneys' fees awarded to Mr. Camet. In *Quantum Res. Mgmt., L.L.C. v. Pirate Lake Oil Corp.*, 13-74 (La. App. 5 Cir. 10/30/13), 128 So.3d 462, 465-66, *writ denied*, 2013-2759 (La. 2/14/14), 132 So.3d 963, we acknowledged the factors a trial court should consider in awarding attorneys' fees:

> A reasonable attorney's fee is determined by the facts of an individual case. *St. Blanc, supra* at 1160; *Gottsegen v. Diagnostic Imaging Services*, 95–977 (La. App. 5 Cir. 3/13/96), 672 So.2d 940,

943, *writ denied*, 96–0707 (La.4/26/96), 672 So.2d 909. Factors to be taken into consideration in determining the reasonableness of attorney's fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. *Rivet v. State, Dept. of Transp. & Dev.*, 96–0145 (La.9/5/96), 680 So.2d 1154, 1161, *citing State, DOTD v. Williamson*, 597 So.2d 439 (La.1992).

In the instant case, the hearing on Mr. Camet's motion for attorneys' fees was held on August 13, 2021. Mr. Camet testified that after Stuart filed its petition naming him as a defendant, he hired Tom Barbera to represent him. Mr. Barbera also filed a countersuit against Stuart on Mr. Camet's behalf. Mr. Camet authenticated an invoice from Mr. Barbera for work that spanned from November 16, 2011, through June 16, 2021, which totaled $46,437.50. Mr. Camet asked the court to award him that amount for Mr. Barbera's services.[13]

Mr. Richardson, who represented Mr. Camet at the hearing, asked Mr. Camet to identify three separate bills for his legal services as well. The bills from Mr. Richardson, which detailed his work on the case from January 30, 2021, through August 26, 2021, totaled $47,849.25. In total, Mr. Camet sought attorneys' fees in the amount of $94,286.75.

We note that throughout the hearing on the motion, counsel for Mr. Camet made repeated references to the factors detailed in *Quantum Res. Mgmt., L.L.C., supra*, and asked the witnesses questions directly addressing those factors.

The trial court awarded $86,536.75 to Mr. Camet, without an explanation of how the amount was calculated.[14] A trial court's award of attorney fees is reviewed

---

[13] Mr. Barbera testified at trial about his retainer with Mr. Camet, his hourly fee, and the type of work he performed. He was also questioned about miscellaneous expenses associated with litigation.

[14] It appears from the evidence introduced that the trial court did not award attorney fees for work performed in connection with the motion for partial summary judgment.

using an abuse of discretion standard. *Covington v. McNeese State Univ.*, 12-2182, (La. 5/7/13), 118 So.3d 343, 348. The Louisiana Supreme Court stated that in applying the standard, "the role of the reviewing court is not to determine what it considers to be an appropriate award, but rather it is to review the exercise of discretion by the trier-of-fact." *Id.*, at 351. The trial court's factual findings used to determine the award are reviewed pursuant to the manifest error/clearly wrong standard. *Stobart v. State, Dep't of Trans. & Dev.*, 617 So.2d 880, 882 (La.1993). After a review of the record, we find no abuse of discretion in the trial court's award of attorneys' fees in this matter.

However, as will be more fully discussed, we find it necessary to remand this matter to the trial court to make an additional award for expenses incurred in connection with Mr. Camet's motion to tax costs and his defense of Stuart's appeal.

**ANSWER TO THE APPEAL**

In his answer to Stuart's appeal, Mr. Camet first seeks additional attorneys' fees in the amount of $7,750 for work performed from August 11, 2021, through August 26, 2021. This Court has held that where a party is forced to litigate payment of a fee to which it is entitled, collection of an additional fee for that work is allowed as well. *Quantum Res. Mgmt., L.L.C., supra.* Accordingly, we find the trial court erred in failing to award Mr. Camet attorneys' fees for the work performed in connection with his motion to tax costs and expenses. We believe the trial court is in a better position to apply the relevant law to the particular facts and circumstances of the case in order to determine a reasonable attorney fee for services performed on Mr. Camet's behalf pertaining to his motion to tax costs and expenses, and we remand for that purpose.

Mr. Camet also seeks additional attorneys' fees and costs for work by his counsel in defending and responding to Stuart's appeal, in the amount of

$33,211.50. No invoice or affidavit providing justification for these fees have been provided for our consideration. An increase in attorneys' fees is usually awarded where a party who was awarded attorneys' fees by the trial court is forced to and successfully defends an appeal. *State Dept. of Transp. and Development v. Brookhollow of Alexandria, Inc.*, 578 So.2d 558 (La. App. 3 Cir.1991), *writ denied*, 581 So.2d 709, 710 (La.1991). Although Mr. Camet has successfully defended this appeal, we cannot, on the showing made, sufficiently ascertain the appropriate amount of an additional award of attorneys' fees. Accordingly, we decline to set an attorneys' fees award for this appeal and remand this matter to the trial court for a hearing on the issue.

Mr. Camet further contends that the trial court erred in not awarding the cost of nine depositions totaling $2,794.94 for the witnesses deposed in this case. Stuart argued against the admission of these bills on the basis that they were not admitted into evidence at trial. Mr. Camet argued that he was asking for the deposition costs under the prevailing party clause of the agreement between the parties and not on a statutory basis. In *Succession of Franz*, 242 La. at 882-83, 139 So.2d at 218-19, the Louisiana Supreme Court held that the Legislature intended that only depositions "used on the trial" were taxable as costs. Accordingly, the trial court correctly denied the costs on that basis. To the extent that the costs for the depositions may have been discretionary with the court, we find no abuse of discretion in its denial of Mr. Camet's request.

Mr. Camet asks that this Court reverse the portion of the trial court's judgment that denied its request for $960 in copy costs. After a review of the record, we find that the trial court erred in failing to award $338.75 for the production of Mr. Camet's bench books which were used at trial. La. R.S. 13:4533 reads, in part, that, "The **cost of ... copies** of acts **used on the trial**, and all other costs allowed by the court, shall be taxed as costs." [Emphasis added.]

Accordingly, we amend the trial court judgment to include this amount as a cost of litigation.

## DECREE

For the foregoing reasons, we affirm the judgment dismissing Stuart's claims against Mr. Camet with prejudice. We also affirm the trial court's initial award of attorneys' fees to Mr. Camet. The judgment is amended, in part, to include an additional $338.75 in costs for the production of Mr. Camet's bench books, and we affirm the judgment as amended. With respect to Mr. Camet's answer to the appeal, we find that Mr. Camet is entitled to attorneys' fees incurred in connection with his motion to tax costs and attorneys' fees and for his successful defense of Stuart's appeal. We therefore remand the matter to the trial court for a determination of those two attorneys' fees issues.

**<u>AMENDED; AFFIRMED AS AMENDED; REMANDED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## <u>NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY</u>

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 7, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 22-CA-105

### <u>E-NOTIFIED</u>
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE E. ADRIAN ADAMS (DISTRICT JUDGE)

| | | |
|---|---|---|
| CAMILLE E. GAUTHIER (APPELLANT) | CHRISTIAN W. HELMKE (APPELLANT) | JOHN F. LEE (APPELLANT) |
| LEONARD L. LEVENSON (APPELLANT) | RAYMOND B. LANDRY (APPELLANT) | THOMAS M. FLANAGAN (APPELLANT) |
| T. RANDOLPH RICHARDSON (APPELLEE) | DAVID H. WILLIAMS (AMICUS) | HANNAH D. ADAMS (AMICUS) |

### <u>MAILED</u>

SHAWN DANIELLE ROUSSEL (AMICUS)
ATTORNEY AT LAW
1340 POYDRAS STREET
SUITE 600
NEW ORLEANS, LA 70112

COLLEEN B. GANNON (APPELLANT)
DONNA R. BARRIOS (APPELLANT)
ATTORNEYS AT LAW
650 POYDRAS STREET
SUITE 2750
NEW ORLEANS, LA 70130

ALIXE DUPLECHAIN (APPELLANT)
ATTORNEY AT LAW
201 ST. CHARLES AVENUE
SUITE 3300
NEW ORLEANS, LA 70170

THOMAS J. BARBERA (APPELLEE)
ATTORNEY AT LAW
3330 LAKE VILLA DRIVE
SUITE 202
METAIRIE, LA 70002