KIM S. TUMMINELLO AND TIM
TUMMINELLO, INDIVIDUALLY, AND ON
BEHALF OF SAVANNA TUMMINELLO

VERSUS

REGEL L. BISSO

NO. 23-CA-560

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 814-580, DIVISION "J"
HONORABLE STEPHEN C. GREFER, JUDGE PRESIDING

November 07, 2024

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Scott U. Schlegel, and Timothy S. Marcel

**JUDGMENT AFFIRMED**
    **FHW**

**SCHLEGEL, J., CONCURS WITH REASONS**
    **SUS**

**MARCEL, J., DISSENTS WITH REASONS**
    **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
KIM S. TUMMINELLO AND TIM TUMMINELLO, INDIVIDUALLY, AND ON
BEHALF OF SAVANNA TUMMINELLO
    Pierre F. Gremillion

COUNSEL FOR DEFENDANT/APPELLEE,
REGEL L. BISSO
    David S. Daly
    Elliot M. Lonker

**WICKER, J.**

The plaintiffs in a legal malpractice action appeal a judgment granting the defendant attorney's exception of peremption and dismissing their claims against him with prejudice. The plaintiffs alleged that the attorney, who had represented them in a medical malpractice case, failed to take any action in the underlying case for more than three years, causing it to be abandoned by operation of law in 2017, and engaged in fraudulent conduct for several years thereafter to conceal his malpractice and delay their discovery of it. The legal malpractice action was brought in 2021, more than three years after the alleged malpractice occurred but within one year of when the plaintiffs learned of it.

After an evidentiary hearing on the exception, the trial court granted the exception and dismissed the plaintiffs' claims with prejudice.[1] The court found insufficient proof of fraud, which creates an exception to the peremption provisions generally applicable to legal malpractice claims, the longest of which is three years from the date of the alleged malpractice. La. R.S. 9:5605(A), (B), (E).

On appeal, the plaintiffs contend the trial court was clearly wrong in its factual finding that the attorney did not engage in any fraudulent conduct and erred as a matter of law or abused its discretion in concluding that their claims are perempted based solely on the attorney's self-serving testimony, without any corroborating evidence. After reviewing the record, we find no basis to overturn the trial court's decision, which we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

At the hearing on the exception, the plaintiffs, Kimberly and Timothy Tumminello, and the defendant, attorney Regel Bisso, each testified and introduced

---

[1] The judgment dismissed the main demand and stated that it did not affect the attorney's reconventional demand for outstanding legal fees. In a prior appeal of the judgment on the exception, this Court dismissed the appeal without prejudice, for lack of appellate jurisdiction, because the judgment was a partial judgment which had not been designated as a final judgment, as required for it to be immediately appealable pursuant to La. C.C.P. art. 1915. *Tumminello v. Bisso*, 22-17 (La. App. 5 Cir. 9/14/22), 349 So.3d 1026. That designation has now been made.

1

documentary evidence. The evidence shows that Mr. Bisso represented Mr. and Mrs. Tumminello, on behalf of themselves and their daughter, Savanna Tumminello, for over 15 years in a medical malpractice action they brought to recover damages for significant and permanent brain injuries suffered by Savanna at birth, for which she requires ongoing and extensive care.[2]

Before Mr. Bisso was retained, the Tumminellos received $2 million from the Louisiana Patient's Compensation Fund, a defendant in the case, while represented by other counsel. They hired Mr. Bisso in 2004 to pursue their damage claims against other defendants, including various health care providers and their insurers. The fee agreement, discussed in more detail below, provided for monthly billing of fees and expenses and a contingency fee if Mr. Bisso obtained any additional recovery for the Tumminellos, which he did not. He withdrew as their attorney in February 2020, after a dispute arose about his fees and the lack of progress in the case.

In January 2021, almost one year after Mr. Bisso withdrew, several defendants in the case sought and obtained an *ex parte* order dismissing the case as abandoned, pursuant to La. C.C.P. 561, because no steps were taken in its prosecution or defense in the court record for three years, from 2014 to 2017. The order dismissed the case without prejudice, "as of the date of the abandonment on April 3, 2017." Notice of the dismissal order was served on the Tumminellos' new counsel, and there is no indication in this record that they appealed the order or sought to have it set aside. The order itself is not before us for review.

The Tumminellos brought the legal malpractice action against Mr. Bisso on February 5, 2021, shortly after the dismissal of the underlying case as abandoned

---

[2] *Kim S. Tumminello, et al. v. Columbia Lakeside Hospital, et al.*, 24th Judicial District Court Case No. 549,798. That case and the legal malpractice case were assigned to different divisions in the district court. The record of the medical malpractice case is voluminous and only certain portions of the record were introduced into evidence, as set forth herein. Our description of what transpired in that case is based on those record excerpts and the testimony of the parties at the hearing.

but within one year of when they learned from their new counsel that the case was subject to dismissal on that basis. They initially alleged that Mr. Bisso negligently failed to take the necessary steps to preserve their legal rights in the medical malpractice case for several years, causing it to be abandoned due to inaction. Only two specific dates in 2020 were alleged in the petition, including Mr. Bisso's withdrawal from the case on February 7, 2020.

Mr. Bisso denied the malpractice allegations and maintained that steps had been taken in the prosecution and defense of the underlying case sufficient to preclude abandonment because he propounded formal discovery to several defendants in the case, served the discovery documents on all parties, and received a response to his requests. Those discovery documents were not filed in the suit record; however, unfiled formal discovery can constitute activity sufficient to preclude abandonment if it is served on all parties, as provided in La. C.C.P. art. 561(B).

Additionally, Mr. Bisso excepted to the petition, asserting that the malpractice claims against him were perempted under La. R.S. 9:5605 because they were brought more than three years after the date of the alleged malpractice: April 3, 2017, the date by which the underlying case was deemed abandoned by operation of law in the dismissal order.[3]

The Tumminellos claimed that the three-year peremptive period did not apply because Mr. Bisso had engaged in fraudulent conduct to prevent them from learning of his alleged malpractice in allowing three years to go by in their case without taking any formal action to prevent its abandonment. In an amended petition, they asserted that he failed to keep them reasonably informed about the status of the litigation and engaged in fraudulent conduct by failing to inform them that he had abandoned their case on April 3, 2017, and by misrepresenting that the

---

[3] Mr. Bisso also filed a reconventional demand for unpaid legal fees, which is not before us.

litigation was ongoing after that date. In particular, they alleged that he continued to bill them for legal services he did not perform, as recently as July 2019, in order to conceal his malpractice.

Although the merits of the legal malpractice claims are not before us in this appeal, the question of whether Mr. Bisso's allegedly negligent conduct could constitute malpractice has a bearing on the pivotal issue of whether he intended to deceive his clients about any such malpractice in order to prevent them from bringing a malpractice claim against him.

## OVERVIEW OF APPLICABLE LAW

### A. Abandonment of Medical Malpractice Action

La. C.C.P. art. 561(A)(1) provides in part that an action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years. This provision is operative without a formal order, but the trial court may issue a formal order of dismissal, as of the date of the abandonment, on the *ex parte* motion of any party. Article 561(A)(3).

Subsection (B) of the article states: "Any formal discovery as authorized by this Code **and served on all parties** whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step in the prosecution or defense of an action." (Emphasis added.)

Service of such discovery on some, but not all, parties does not constitute a step in the prosecution of the action under Article 561. *Guillory v. Pelican Real Estate, Inc.*, 14-1539, 14-1593, 14-1624 (La. 3/17/15), 165 So.3d 875, 877-78.

### B. Time for Bringing Legal Malpractice Action

The time within which a legal malpractice action must be brought is governed by La. R.S. 9:5605, which is discussed in more detail below. The statute provides three peremptive periods for legal malpractice actions and states that these periods are not subject to interruption or suspension:

4

- One year from the date of the act, omission, or neglect alleged to constitute malpractice;
- One year from the date of discovering the act, omission, or neglect, and
- Three years, "at the latest," from the date of the act, omission, or neglect when the malpractice is discovered after the date of the act, omission or neglect.

§ 5605(A), (B); *Jenkins v. Starns,* 11-1170 (La. 1/24/12), 85 So.3d 612, 626.

These peremptive periods do not apply in cases of fraud on the attorney's part, including fraud in the act of malpractice itself, which has not been alleged here, or fraudulent concealment of the act of malpractice after it occurs. § 5605(E); *Lomont v. Bennett*, 14-2483 (La. 6/30/15), 172 So.3d 620, 627, 628-29, 636; *Garner v. Lizana*, 13-427 (La. App. 5 Cir. 12/30/13), 131 So.3d 1105, 1108, 1113, *writ denied*, 14-0208 (La. 4/4/14), 135 So.3d 1183, cited with approval in *Lomont*, 172 So.3d at 628. In such cases, the action is governed instead by the one-year prescriptive period generally applicable to tort claims, which may be interrupted or suspended based on factors such as when the plaintiff discovered the malpractice. La. C.C. art. 3492; *Lomont v. Bennett*, 172 So.3d at 637-38.

The existence of fraud is a question of fact. *Bingham v. Ryan Chevrolet-Subaru, Inc.*, 29,453 (La. App. 2 Cir. 4/2/97), 691 So.2d 817, 819, *writ denied*, 97-1155 (La. 6/20/97), 695 So.2d 1357. *See also Lomont*, 172 So.3d at 629, 633. Specific intent to deceive is a necessary element of fraud, and a finding of fraud cannot be based on the attorney's mistake or negligence, no matter how great. *Id.* at 634. To constitute fraud under La. R.S. 9:5605(E), the attorney's allegedly misleading conduct must be deliberate and knowing, and it must be intended to lull the client into inaction and prevent the client from asserting a legal malpractice claim. *Id.* at 634-35.

Absent proof of fraud by the attorney, the fact that the client did not discover the alleged malpractice until more than three years after it occurred does not extend the three-year peremptive period. *See and compare Drennan v. Killian*,

5

97-1120 (La. App. 5 Cir. 4/28/98), 712 So.2d 978, and *LeBlanc v. Andrieu*, 03-355 (La. App. 5 Cir. 7/29/03), 852 So.2d 1046, *writ denied*, 03-2424 (La. 11/21/03), 860 So.2d 558.

Peremption statutes are strictly construed against peremption and in favor of the claim. Of the possible constructions, the one that maintains enforcement of the claim or action, rather than the one that bars enforcement, should be adopted. *Lomont*, 172 So.3d at 627.

## ADDITIONAL FACTS RELATING TO EXCEPTION

As stated above, the Tumminellos were represented by other counsel in the medical malpractice case before they hired Mr. Bisso and after he withdrew. One of their initial attorneys served as co-counsel with Mr. Bisso, and the other withdrew before Mr. Bisso was hired but is now representing the Tumminellos in the legal malpractice case

Initially, the Tumminellos were represented in the medical malpractice case by Pierre Gremillion, a trial lawyer, and Gail Schlosser, a relative of Mrs. Tumminello's.[4] Ms. Schlosser did not have experience with medical malpractice litigation but was in the case to "make sure everything was going to go right for us," according to Mrs. Tumminello.

Mr. Gremillion withdrew from the case after the settlement with the Patient's Compensation Fund. At the suggestion of Ms. Schlosser, the Tumminellos retained Mr. Bisso in November 2004, as "trial counsel," according to their contingency fee contract, to work with Ms. Schlosser in pursuing their damage claims against other defendants.

Ms. Schlosser formally withdrew as counsel of record in 2009 but remained involved in the case informally thereafter.

---

[4] Gail Schlosser is sometimes referred to in the record as Lorrel Schlosser.

6

None of the damage claims against other defendants had come to fruition by February 2020, when Mr. Bisso withdrew from the case and ended his representation of the Tumminellos.

The abandonment issue was raised by several defendants in the underlying case in January 2021, almost a year after Mr. Bisso withdrew, based on the lack of any formal activity by any party in the court record from 2014 to 2017, while Mr. Bisso represented the Tumminellos.

At the exception hearing, Mr. Bisso testified that he did not learn of the abandonment issue or the dismissal until he was served with the legal malpractice petition in early 2021. He maintained that he had taken a step to keep the case active during the years in question by serving unfiled discovery requests on all parties in 2016. He said he had no reason to believe the case had been abandoned when he withdrew in 2020, and he denied having any intent to mislead his clients or to conceal anything from them. He acknowledged that there was a mistake in his bill for a status conference that was set in July 2019 but denied having billed his clients for work he did not perform.

**BURDEN OF PROOF**

In *Lomont v. Bennett, supra*, the Louisiana Supreme Court addressed the burden of proof at a hearing on a peremption exception under La. R.S. 9:5605 when, as here, the plaintiff has alleged fraud as an exception to the peremptive periods. The Court stated that fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence, including highly suspicious facts and circumstances. *Lomont*, 172 So.3d at 629, citing La. C.C. art. 1957 (other internal citations omitted here and below). Even so, however, specific intent to deceive is a necessary element of fraud. *Id.* at 634.

As with other types of peremptory exceptions, the exceptor normally bears the burden of proving the grounds for the exception. But if peremption is evident

7

on the face of the pleadings, the burden shifts to the plaintiff to show the action has not preempted. *Id*. at 626-27. If the plaintiff makes a *prima facie* showing of fraud in the petition by affirmatively setting forth detailed factual allegations of fraud and asserting that the defendant's fraudulent actions rendered the peremptive period inapplicable, the defendant has the burden of proving peremption. *Id.* at 627. To satisfy this burden the defendant must prove that he did not commit fraud as alleged, rendering the fraud exception to the general rules of peremption in La. R.S. 9:5605 inapplicable. *Id.* This burden cannot be satisfied by the attorney's self-serving testimony alone, unsupported by any other evidence. *Id.* at 634.

Evidence may be introduced at the hearing on a peremptory exception pleaded prior to trial. La. C.C.P. art. 931. In the absence of such evidence, the exception must be decided based on the facts alleged in the petition, with all allegations accepted as true. If evidence is introduced at the hearing, the district court is not bound to accept the plaintiff's allegations as true, and the court's findings of fact are reviewed under the manifest error-clearly wrong standard of review. *Id.* at 627.

In this case, peremption was evident on the face of the petition, as amended. The Tumminellos contend the allegations of fraud in their amended petition were sufficiently detailed to shift the burden of proof on the exception to Mr. Bisso. Mr. Bisso disputes that contention in his appellate brief, but he did not object to presenting his evidence and closing arguments first at the hearing and being given the opportunity for rebuttal. This comports with the directives in *Lomont* regarding the burden of proof.

Because the Tumminellos introduced evidence of fraud at the hearing and did not rely solely on the allegations in their amended petition, the trial court was not bound to accept those allegations as true but was required to weigh the conflicting evidence. *Id.* at 627.

After considering all of the evidence presented at the hearing, the trial court found that Mr. Bisso did not intend to deceive his clients about the alleged malpractice, a prerequisite to a finding of fraud under La. R.S. 9:5605(E). The court found that Mr. Bisso met his burden of proving that he did not commit fraud as alleged, and that plaintiffs' claims were perempted.

The issue before us on appeal is whether the trial court erred in concluding that the legal malpractice claims are perempted because they were brought more than three years after the date of the alleged malpractice, and the conflicting evidence that was presented on the issue of fraud did not establish that Mr. Bisso deliberately and knowingly concealed the abandonment of the underlying case from his clients in order to lull them into inaction and prevent them from learning of a potential malpractice claim against him.

## EVIDENCE INTRODUCED AT HEARING

In addition to the testimony of the litigants, the evidence at the hearing on the exception included their 2004 contingency fee contract (the "Fee Agreement"), excerpts from the case docket in the medical malpractice case from 2014 forward ("Docket Excerpts"), the 2016 discovery requests and responses, the minute entry and Mr. Bisso's invoice relating to the July 2019 status conference, and the 2021 *ex parte* motion and order for dismissal based on abandonment.

### The Fee Agreement and Other Plaintiffs' Counsel

The Fee Agreement between Mr. Bisso and the Tumminellos provided that he would bill them for his time on an hourly basis, at a reduced hourly rate, and that they would be billed monthly for his fees and any expenses he incurred in the case. The agreement further provided that Mr. Bisso would receive an additional fee of six percent of any amount he recovered on their behalf through settlement or a final judgment. That provision never came into play, as Mr. Bisso did not obtain any additional recovery for the Tumminellos.

9

The Fee Agreement states, "The parties acknowledge that Client presently has counsel and that Attorney's primary role will be that of trial counsel." The other counsel was Gail Schlosser, who remained an attorney of record for the Tumminellos until she formally withdrew in 2009, due to other work commitments, according to Mr. Bisso, or to personal and family health issues, according to Mrs. Tumminello.

The parties gave conflicting testimony as to Ms. Schlosser's role in the case after she withdrew. Mr. Bisso testified that Ms. Schlosser remained active in the case and worked closely with him on it from the time she formally withdrew in 2009 until his representation of the Tumminellos ended in 2020 because she was familiar with the case from its inception and had extensive knowledge and file materials about the case from those early years.

The Tumminellos regarded Mr. Bisso as their primary attorney in the case and said they relied on him to move the case forward. They knew that Ms. Schlosser remained involved in the case informally after she withdrew, but they considered her role to be far less active than Mr. Bisso's. Mrs. Tumminello testified that Ms. Schlosser "was just there to assist but not do a whole lot."

For reasons that were not directly addressed at the hearing, Ms. Schlosser is listed as a "client" in the Fee Agreement between the Tumminellos and Mr. Bisso. It appears that this may have been done so that Mr. Bisso could charge the Tumminellos for the time he spent conferring with Ms. Schlosser about the case.[5] Additionally, Ms. Schlosser and Mr. Gremillion, who served as plaintiffs' initial co-counsel in the underlying case, are listed as parties plaintiff in the case caption on the 2019 minute entry that was introduced in evidence at the exception hearing.

---

[5] Mr. Bisso testified that the Fee Agreement authorized him to charge for the time he spent talking to or working with Ms. Schlosser. There is no language to that effect in the Fee Agreement aside from the references to her as a client.

Mr. Gremillion brought the legal malpractice action against Mr. Bisso on behalf of the Tumminellos, appeared on their behalf at the hearing on the exception, and continues to represent them.

Ms. Schlosser was not called as a witness at the hearing.

**Activity in the Medical Malpractice Case and Monthly Billing**

At the hearing, Mr. Bisso testified that after he enrolled in the medical malpractice case, he and Ms. Schlosser amended the pleadings several times and later reviewed the 14-volume record together to determine whether all parties had been served with all of the amended pleadings. He stated that he also engaged in discovery and filed several motions seeking a trial date or a status conference to move the case toward trial on the claims against the remaining defendants. He filed one such motion on April 3, 2014, and another more than five years later, on June 5, 2019, according to the Docket Excerpts. Those excerpts indicate that no other pleadings were filed in the record by any party, and no other court activity occurred in the case, from 2014 to 2019.

With respect to who the remaining defendants were, Mr. Bisso testified that all of the defendants in the case other than the Louisiana Patient's Compensation Fund were still in the case while he and Ms. Schlosser were in the case.

Mr. Bisso sent monthly bills to the Tumminellos for his fees and expenses, in accordance with the Fee Agreement. When some bills were not paid in full and the outstanding balance reached a certain amount, he would tell them that he could not continue working on the case until they paid the balance in full, which they did several times. He rarely sent them copies of any legal documents he prepared or reviewed on their behalf.

Mr. and Mrs. Tumminello testified that they contacted Mr. Bisso periodically to ask about the status of the case, initially by phone and later by email after being billed for the phone calls. Mr. Bisso acknowledged that he did not give

them detailed information about what he and Ms. Schlosser were doing in the case because he knew she was related to them, and he assumed that she was updating them regularly about the work they were doing in the case.

By 2014, Mr. Bisso had been representing the Tumminellos for ten years, and the case had not been set for trial. Mrs. Tumminello testified that she contacted Mr. Bisso "a good bit" from 2014 to 2017 to ask what was happening with the case and whether he had gotten a trial date. She said he told her that there was more to do before they could get a trial date, but it seemed to her that they had already done those things. She stated that they "kept getting the bills" from 2014 to 2019, and that Mr. Bisso did not get a trial date during that time even when the bills were paid in full.

Mr. and Mrs. Tumminello testified that they were under the impression that the case was moving forward after 2014 based on the fact that they were receiving monthly bills. Mr. Tumminello stated that Mr. Bisso did not give him any indication that the case had languished and was subject to being dismissed.

Mr. Tumminello related that around 2017 or 2018, he became concerned about whether all of the work reflected in the bills was actually being done. He testified, "I knew there was something wrong; I just couldn't put my finger on it."

Q.      How would you describe it?  Something wrong like what?

A.      Lack of knowledge.  It became more and more clear that he
        was not versed in this area.  And I didn't know if he just didn't
        know what he was doing or if he was taking us for a ride.  I
        know I stated that several times to Kim that he's just milking
        us for billing, monthly billing.

Mrs. Tumminello also questioned whether all of the work they were billed for was being done, but she said they did not want to start over with another attorney after having worked with Mr. Bisso for so long. She said they relied on him to protect their legal rights and move the case forward.

Despite those concerns, Mr. Tumminello testified that he did not do anything to verify what legal work Mr. Bisso was doing.

The Tumminellos estimated that they had paid Mr. Bisso about $15,000-20,000 over the course of his representation of them. Aside from the bill for the month of July 2019, there is no evidence as to how much they were charged in fees and expenses, or how much they paid, from 2017 until 2020, the time period relevant to the fraudulent concealment claim. Mrs. Tumminello testified that they had "a substantial amount of bills" in their records or in the file Mr. Bisso returned to them after he withdrew, but they did not have all of them. However, the Tumminellos introduced only one bill in evidence: the bill relating to the July 2019 status conference, discussed below.

**The 2016 Discovery**

At the exception hearing, Mr. Bisso introduced evidence indicating that he had propounded two sets of discovery requests to several defendants in the medical malpractice case in June 2016: interrogatories to three defendants (the doctor, the medical clinic and their liability insurer, the Louisiana Medical Mutual Insurance Company, or LAMMICO), and requests for admissions of fact to those three defendants plus a fourth defendant (an individual defendant whose role in the case is not disclosed in the caption), all of whom were represented by the same attorney. For simplicity, we shall refer to these defendants collectively as the "LAMMICO Defendants." The discovery requests sought information from the LAMMICO Defendants about whether they had been served with and filed responsive pleadings to the plaintiffs' original and amending petitions, among other things.

Mr. Bisso also introduced a copy of the LAMMICO Defendants' July 2016 responses to the requests for admission, which Mr. Bisso testified he received by

email from their attorney.[6]  The responses consisted of objections to each of the requests for admissions.  There is no indication in this record that Mr. Bisso took any further formal action in the case until June 2019, when he filed a motion seeking a trial date or a status conference.

Although the 2016 discovery requests and responses were not filed in the suit record, each bore a certificate of service by the attorney who prepared them.  Mr. Bisso certified that he served a copy of the discovery requests "upon all counsel of record via facsimile, e-mail or by placing same in the U.S. Mail, postage prepaid and properly addressed," on June 15, 2016.  The attorney who prepared the responses to the requests for admissions of fact certified that he "emailed the above responses to all counsel" on July 28, 2016.

Mr. Bisso testified that he had sent the discovery requests to "all parties," and said, "I complied with whatever certificate of service I put on the document." However, he was not asked who the remaining parties in the case were at that time or how many parties remained, and he did not offer any evidence to substantiate who was served or how they were served, such as copies of cover letters or email correspondence.  He testified that he does not usually include a cover letter when mailing copies of discovery to all counsel of record, and even if he had done that, the letter would have been addressed to "All Counsel."

According to the case caption on the discovery requests, there were eight defendants in the case:  the hospital, three individuals (a doctor, a nurse and a third individual whose role in the case is not disclosed), a medical clinic, and three insurers (LAMMICO and two others).  Ms. Schlosser is listed as a plaintiff in the discovery caption, along with the Tumminellos.  Although the case caption is not

---

[6] Only three of the four defendants to whom the requests for admissions of fact were propounded are named as responders in the responses:  the same three defendants to whom the interrogatories were propounded.  The fourth defendant to whom the admissions requests were propounded is not listed as a responder but is listed as a co-defendant with the other three in later pleadings.

necessarily determinative of who the parties were at that time, no other evidence was presented to establish that.

Despite the lack of clarity in the evidence as to who "all parties" were in 2016, and based on the certificates of service on the discovery requests and responses, Mr. Bisso maintained that those documents were "served on all parties," as required by La. C.C.P. art 561(B) for unfiled discovery to constitute a step in the prosecution of the case sufficient to preclude its dismissal on the grounds of abandonment.

**The 2019 Status Conference**

On June 5, 2019, Mr. Bisso moved to set the case for trial or for a status conference. A status conference was set for July 24, 2019, but did not take place. A minute entry for that date states that the status conference was continued to be reset at a later date because the court was in the middle of a civil jury trial. According to the minute entry, no one appeared "in open court" for the plaintiffs or for the defendant hospital.

On August 1, 2019, Mr. Bisso sent the Tumminellos a bill for about two and a half hours of work he and his paralegal performed in July, including two hours of his time to "[p]repare for and attend status conference" and for a "meeting with G. Schlosser" on July 24, 2019. The Tumminellos testified that Mr. Bisso did not tell them anything about the July 2019 status conference aside from what was in his bill, despite Mrs. Tumminello having repeatedly asked Mr. Bisso when they were going to get a trial date.

Mr. Bisso was questioned about the July 24, 2019 minute entry and the discrepancies between that document and the statements in his bill about what he did on that date. Mr. Bisso acknowledged that the statement in his bill that he attended a status conference that day was a mistake, but he denied having intentionally billed his clients for work he did not do.

Mr. Bisso testified that typically, when a hearing or a status conference was set in the case, he and Ms. Schlosser would meet to prepare for it. He did not remember exactly what he did that day, or when he learned that the status conference could not be held as scheduled. He acknowledged that he "obviously" did not attend a status conference that day but stated, "that doesn't mean that I didn't go to court. I might have been told on that very day that the judge couldn't conduct the status conference. I just don't have specific memory. . . . But, as far as I'm concerned, there was no fraud in this billing whatsoever."

On further questioning, Mr. Bisso initially stated, "My testimony would be that I came to court and probably was told at the time that the judge was in the middle of a jury trial and couldn't conduct it [the status conference]. But the fact is I think the billing is proper." He later stated, "I honestly can't testify under oath as to what I did that date," but he asserted that he had done the work reflected in his bill, presumably meaning that he devoted two hours of time to matters relating to the status conference even though he did not attend a status conference, as stated in the bill.

**Termination of Attorney-Client Relationship**

The Tumminellos did not learn of the discrepancy between the August 2019 bill and the minute entry until much later. Nevertheless, they did not pay the bill, which included about $300 for work performed in July and a previous balance of about $3,000. Mr. Bisso sent a letter with the bill requesting payment in full and stating, "I cannot continue work with such a large outstanding balance." He asked that they contact him if they had any questions about the bill or any other matters.

In early 2020, Mr. Bisso and Mrs. Tumminello ran into each other at a local grocery store. She asked him what was going on in the case, and he told her that he would not work on the case until they paid him what they owed him. She

indicated that they were not willing to keep paying him unless he got a court date. The impasse continued in some subsequent conversations and was not resolved.

On February 7, 2020, Mr. Bisso formally withdrew as attorney of record for the Tumminellos. The Docket Excerpts indicate that a letter to Mrs. Tumminello and Ms. Schlosser dated February 3, 2020 was attached to his motion to withdraw. However, neither the motion nor the letter was introduced in evidence.

Shortly after Mr. Bisso withdrew from the case, he gave the Tumminellos their file, which filled four boxes, according to Mrs. Tumminello, who picked up the file from his office.

At some unspecified time later in 2020, the Tumminellos consulted with other counsel, Pierre Gremillion and/or David Motter, who apparently worked with Mr. Gremillion, to review the client file they had received from Mr. Bisso.

The Tumminellos testified that they did not know their case was at risk of being dismissed as abandoned due to inactivity during Mr. Bisso's representation of them until their new counsel told them of that possibility after reviewing the returned client file. They each testified that they had a general understanding that a court case could be dismissed due to lack of activity, but they apparently never discussed that possibility with Mr. Bisso, despite their concerns about the lack of forward progress in the case.

There was no evidence that the Tumminellos ever discussed their concerns about what Mr. Bisso was or was not doing on their behalf, or about the accuracy of his bills, with Ms. Schlosser.

The Tumminellos testified that they did not receive from Mr. Bisso a copy of any discovery requests or responses in 2016. They did not review the returned file, but Mr. Gremillion indicated during his questioning of Mr. Bisso that copies of the 2016 discovery documents were not in the returned file. Mr. Bisso testified

that they may have been saved on his computer and said he gave the Tumminellos a disc with a digital copy of his computer file, which they did not recall receiving.

**New Plaintiffs' Counsel and the 2021 Dismissal Motion and Order**

The Docket Excerpts indicate that in December 2020, Mr. Motter enrolled as counsel of record for the Tumminellos and filed a motion to set a status conference. A status conference was set for January 12, 2021, and notice was served on the attorney for the LAMMICO Defendants. Before the status conference was held, those defendants moved for dismissal of the case as abandoned, despite the fact that they had responded to Mr. Bisso's discovery requests in 2016 and despite the certifications by both attorneys that the discovery requests and responses had been served on "all counsel."

In support of the dismissal motion, the LAMMICO Defendants filed the affidavit of attorney Pierre Gremillion, signed on January 4, 2021. In the affidavit, Mr. Gremillion stated, "I am a self-represented party" in the medical malpractice action. He further stated:

- He was not served with any formal discovery request, discovery response, or pleading in this matter for a period of over three years, beginning on or before April 3, 2014;
- He has reviewed the online docket sheet in this matter, which reveals that no "step" in the prosecution or defense of this matter was taken for a period of over three years, beginning on April 3, 2014; and
- No deposition has been taken in this matter at any time since April 3, 2014.

In the dismissal motion, the movers did not mention the 2016 discovery requests filed by Mr. Bisso or their responses to those requests but asserted, based on Mr. Gremillion's affidavit, that no unfiled formal discovery had been served on all parties after April 3, 2014, and no court activity had occurred in the case from that date until the June 2019 motion for status conference was filed more than three years later, after the case was deemed abandoned by operation of law under La. C.C.P. art. 561(A)(3), which states that abandonment "shall be operative without

formal order[.]" The movers asserted that the case was abandoned by operation of law as of April 3, 2017, and stated that they had taken no action since that date that could be construed as a waiver of their claim of abandonment.[7]

The trial court agreed and issued an *ex parte* order on January 12, 2021, dismissing the medical malpractice case without prejudice "as of the date of the abandonment on April 3, 2017."[8] The Docket Excerpts indicate that the order was served on David Motter, counsel for the Tumminellos, on January 15, 2021. As we pointed out previously, there is no indication in this record that any steps were taken to appeal the order or to have it set aside.[9]

## THE LEGAL MALPRACTICE ACTION

Mr. Motter and Mr. Gremillion filed the legal malpractice action on behalf of the Tumminellos on February 5, 2021, more than three years after April 3, 2017, the date by which the medical malpractice case was deemed abandoned by operation of law, but within one year after the plaintiffs learned of the lack of formal activity in the case that led to its dismissal as abandoned.[10]

The peremptive periods in La. R.S. 9:5605(A) commence on "the date of the act, omission, or neglect" alleged to constitute the malpractice. The parties do not dispute that in this case, that date is April 3, 2017, the date by which the underlying case was deemed abandoned by operation of law. Because the legal malpractice action was filed more than three years later, the pivotal issue is whether there was

---

[7] The plaintiffs' June 2019 motion to set the case for a status conference did not preclude its dismissal for abandonment. Although such a motion would constitute a step sufficient to interrupt abandonment under Article 561 if filed before the three-year period of inactivity has passed, steps taken by the plaintiff after the abandonment period has accrued cannot revive the action. *Compensation Specialties, L.L.C. v. New England Mutual Life Insurance Co.*, 08-1549 (La. App. 1 Cir. 2/23/09), 6 So.3d 275, 280, *writ denied*, 09-0575 (La. 4/24/09), 7 So.3d 1200.

[8] The judgment dismissed the claims of the Tumminellos and Ms. Schlosser's claims as a party plaintiff. Mr. Gremillion and the Louisiana Patient's Compensation Fund and its Oversight Board are listed as plaintiffs in the case caption on the July 2019 minute entry, but they are not mentioned in the dismissal order.

[9] An *ex parte* order of dismissal for abandonment is reviewable through a motion to set aside the order or through an appeal, which must be filed within 30 days and 60 days, respectively, of the sheriff's service of notice of the order. La. C.C.P. art. 561(A)(4), (A)(5).

[10] As mentioned previously, the allegations of fraud on Mr. Bisso's part were not contained in the original petition but were added in a supplemental and amended petition filed on June 14, 2021, after the peremption exception was raised. Because the original petition was filed more than three years after the date of the alleged malpractice, no issue has been raised as to whether the allegations in the amended petition relate back to the filing date of the original petition.

sufficient proof of fraud under La. R.S. 9:5605(E), specifically fraudulent concealment of malpractice, to preclude application of the three-year peremptive period that would otherwise apply under La. R.S. 9:5605(A). *Lomont, supra*, 172 So.3d at 627-29.

## THE HEARING ON THE EXCEPTION

The hearing on the peremption exception was held on August 9, 2021, about seven months after the dismissal of the underlying case as abandoned. Mr. Bisso introduced copies of the dismissal motion and order, along with a copy of Mr. Gremillion's affidavit in support of the dismissal, at the hearing.

Mr. Gremillion appeared at that hearing as co-counsel for the Tumminellos, along with Mr. Motter, but did not testify as a witness. Mr. Motter has since withdrawn from the case.

Mr. Bisso testified that he never allowed three years to go by in the underlying case without taking steps to avoid a claim of abandonment. Although he said he believed that the dismissal order should not have been granted and "could easily be reversed," the legal delays for seeking review of the order had passed. Additionally, Mr. Gremillion's affidavit supports the dismissal order.

Mr. Bisso maintained that he was not aware of the abandonment issue in the underlying case, or of Mr. Gremillion's assertions that he was not served with a copy of the 2016 discovery requests and responses, until February or March 2021, after he was sued for legal malpractice and reviewed the dismissal motion and order, and after his representation of the Tumminellos had ended. Mr. Bisso was not asked whether Mr. Gremillion was one of the parties to whom he sent his discovery requests. The record does not reflect whether those requests and the LAMMICO defendants' responses were sent to Mr. Gremillion and not received, or whether they were not sent to him.

As mentioned previously, Mr. Bisso acknowledged the mistake in the description of the work he did on July 24, 2019 in his bill but denied having billed his clients for work he did not do.

The Tumminellos testified about their concerns that Mr. Bisso was not doing enough to move the case forward or to keep them informed about the status of the case despite sending them monthly bills. They also related their concerns about being billed for work he did not do, especially from 2017 forward, a date that became more significant when they later learned from their new counsel that their case could be, and ultimately was, dismissed as abandoned due to inactivity from 2014 to 2017. They introduced in evidence the July 24, 2019 minute entry and Mr. Bisso's bill for work done on that date to show that he charged them for attending a status conference that did not take place. Although they said that they had copies of other monthly bills, they did not introduce any other bills in evidence.

In closing arguments at the hearing, Mr. Bisso asserted that throughout his representation of the Tumminellos, he believed that the formal, albeit unfiled, discovery requests he propounded in 2016, and the responses to those requests that he received, had been served on all parties and thus constituted a step in the prosecution or defense of the case that would preclude a finding of abandonment under La. C.C.P. art. 561. Therefore, he argued, he had no reason and no intention to mislead his clients or to conceal anything from them, a necessary element for establishing fraud under La. R.S. 9:5605(E).

Counsel for the Tumminellos, Mr. Gremillion, pointed out that Mr. Bisso did not offer any evidence to substantiate his assertions regarding service of the discovery on all parties and that Mr. Gremillion's affidavit, introduced by Mr. Bisso, clearly showed that all parties were not served. Mr. Gremillion argued that Mr. Bisso's testimony about the discovery, the July 2019 status conference and the billing discrepancy was self-serving and legally insufficient to preclude a finding

21

that he fraudulently concealed the malpractice from his clients to prevent them from learning of it until after he withdrew and returned their file to them.

Mr. Bisso countered that he did not know about Mr. Gremillion's affidavit until after he withdrew from the case in 2020. He maintained that the affidavit did not alter the fact that he considered the medical malpractice case to be viable and ongoing throughout his representation of the Tumminellos. Based on this sequence of events, Mr. Bisso argued that the evidence did not establish any fraudulent intent on his part to conceal legal malpractice in order to prevent his clients from asserting a malpractice claim against him.

## TRIAL COURT FINDINGS

In oral reasons for its judgment granting the peremption exception, the trial court found that Mr. Bisso did not engage in any fraudulent billing or other fraudulent conduct to conceal any alleged malpractice from his clients. The court emphasized that Mr. Bisso's representation of the Tumminellos ended almost a year before the abandonment issue was raised in the underlying case and found that Mr. Bisso reasonably believed, throughout his representation of the Tumminellos, that the discovery requests he propounded in 2016 constituted a step in the prosecution of the case that would prevent a dismissal for abandonment. The court found that Mr. Bisso's testimony about his belief in this regard was "not simply self-serving testimony" because there was proof that the parties to whom the discovery was propounded responded to it. In light of that evidence, the court pointed out that this was not a situation in which an attorney created a discovery document after allegations of abandonment were raised, backdated it, and "stuck it in his file" as a basis for claiming a case was not abandoned.

As to whether the discovery was served on all parties, as required "to technically interrupt abandonment," the court stated that that issue was not before it, having already been decided in the underlying case.

The issue before the Court is whether or not there was intent by Mr. Bisso to defraud. Based upon the fact that that discovery was sent [to] and answered [by] at least one party[,] . . . it is reasonable to believe Mr. Bisso's testimony that . . . he never thought the case was, in fact, abandoned. This is not a situation where a judgment of abandonment was granted previously and Mr. Bisso held that information to himself until three years passed. The judgment of abandonment in this case was actually not signed until after Mr. Bisso's representation of the Tumminellos had terminated. . . .

. . . There doesn't appear to be any intent to defraud. . . .

Without the knowledge of the abandonment itself, it is impossible to attribute fraudulent actions to Mr. Bisso in continued billings to say that he was trying to fraudulently have the plaintiffs believe that he was continuing their representation, even though he knew the case was abandoned and thus billed for things that did not happen or charged for things that he did not do.

The court did not find the discrepancy between the minute entry and the bill relating to the July 24, 2019 status conference to be indicative of fraud, stating:

. . . Mr. Bisso explain[ed] . . . that, in fact, he did attend that status conference but it did not take place in open court because Division N was in the midst of a civil jury trial at that time. And there would be no indication that anything took place [on] the record in open court thus explaining the minute entry.

. . . [W]hether or not he was dilatory in moving the case forward is not before this Court. . . . The sole issue before this Court is whether the peremptive period should apply in this particular case. And the only way it doesn't apply is if it can be show that Mr. Bisso was, in fact, fraudulent in the concealment of the malpractice. Given that his testimony was he does not believe there was ever an abandonment, thus there was ever malpractice, it does not seem plausible to believe that he took any actions to fraudulently conceal that malpractice.

The court acknowledged that dismissal of the legal malpractice action was a "harsh remedy and not one that is favored in the law" but concluded that it was bound to apply the law as written and grant the exception of peremption.

**ASSIGNMENTS OF ERROR**

In two assignments of error raised on appeal, the Tumminellos contend that the trial court was clearly wrong in finding that Mr. Bisso did not fraudulently conceal from them his lack of work performed and abandonment of the medical malpractice case, including fraudulent billing for work not performed. They also

claim the court erred as a matter of law in determining that Mr. Bisso carried his burden of proving that he did not commit fraud by concealment, and thus that La. R.S. 9:5605's three-year peremptive period applied, based solely on his own self-serving testimony, without any reliable documentation to support it.

## STANDARD OF REVIEW

In reviewing these assignments of error, we apply the standards of review set forth by the Louisiana Supreme Court in *Lomont v. Bennett, supra*, 172 So.3d 620, with that Court's internal citations omitted.

If evidence is introduced at the hearing on a peremption exception, the district court's findings of fact, including its findings on the issue of fraud, are reviewed under the manifest error-clearly wrong standard of review. *Lomont*, 172 So.3d at 627, 633. Such findings should not be reversed if they are reasonable in light of the record reviewed in its entirety, even though the appellate court may have weighed the evidence differently had it been sitting as the trier of fact. *Id.* at 627.

Credibility determinations are within the district court's discretion and should not be disturbed upon review, where conflict exists in the testimony, absent a determination that the district court abused its discretion. *Id.* at 633. However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness's story, the appellate court may find manifest error or clear wrongness even in a finding purportedly based on a credibility determination. *Id.*

Despite the high degree of deference given to the trial court's factual findings and credibility determinations on appeal, a reviewing court is not required to "rubber stamp with approval any and all factual determinations by the trial court." *Id.* A factual finding based solely on a defendant's self-serving testimony,

when found to be implausible on its face and unsupported by any other evidence, is not entitled to deference. *Id.* at 634.

Issues of law are reviewed *de novo*, without deference to the trial court's legal conclusions. *Id.* at 627-28.

## LA. R.S. 9:5605

The peremptive periods applicable to a legal malpractice action are established in La. R.S. 9:5605, which states in part:

> A. No action for damages against any attorney at law duly admitted to practice in this state, . . . whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; **however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect**.
>
> B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. . . . **The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.**
>
> *****
>
> E. **The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.**[11]

(Emphasis added.)

Civil Code article 3458 states: "Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." Article 3461 provides that peremption "may not be renounced, interrupted or suspended."

---

[11] The term "peremptive period" (singular) in Subsection (E) refers to both the one-year and the three-year peremptive periods in Subsection (A). *Lomont*, 172 So.3d at 636.

With respect to fraud, Civil Code article 1953 states:

Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.

Comment (b) of the 1984 Revision Comments to Article 1953 states:

Under this article, fraud may result not only from an act, such as a false assertion or suppression of the truth, but also from a failure to act, such as silence, **that is calculated to produce a misleading effect**. (Emphasis added.)

While fraud may result from a party's silence or inaction, mere silence or inaction without fraudulent intent does not constitute fraud. *Monroe v. McDaniel*, 16-214 (La. App. 5 Cir. 12/7/16), 207 So.3d 1172, 1178. Specific intent to deceive is a necessary element of fraud, and fraud cannot be predicated upon mistake or negligence, no matter how great. *Lomont*, 172 So.3d at 634, citing *Sanga v. Perdomo*, 14-609 (La. App. 5 Cir. 12/30/14), 167 So.3d 818, 821, *writ denied*, 15-0222 (La. 6/19/15), 172 So.3d 650, and *Terrebonne Concrete, LLC v. CEC Enterprises, LLC*, 11-0072 (La. App. 1 Cir. 8/17/11), 76 So.3d 502, 509, *writ denied*, 11-2021 (La. 11/18/11), 75 So.3d 464.

To establish fraud under La. C.C. art. 1953, the party alleging fraud must prove that the opposing party deliberately sought to gain an unjust advantage or to cause loss or inconvenience to the other. *Sanga v. Perdomo*, 167 So.3d at 818.

Fraud within the meaning of La. R.S. 9:5605(E) involves conduct by an attorney that is deliberate, knowing, and intended to misrepresent, suppress, or conceal evidence of malpractice in order to gain an advantage by avoiding a malpractice suit. *Lomont*, 172 So.3d at 629, 634. Stated another way, the fraud exception in the peremption statute requires proof of conduct by an attorney that is calculated to produce a misleading effect in order to delay the filing of a potential malpractice claim. *Bourque v. Hoychick*, 97-627 (La. App. 3 Cir. 11/19/97), 704 So.2d 815, 818, citing Comment (b) to La. C.C. art. 1953.

26

## ANALYSIS

### A. 2016 Discovery

With respect to the 2016 discovery documents and whether they were served on all parties, as required to interrupt abandonment under La. C.C.P. art. 561, the trial court correctly stated that a certificate of service on a pleading is presumed to be correct, but the presumption is not conclusive and may be rebutted by evidence establishing that the service information contained in the certificate is not accurate. *See Hall v. Hall*, 460 So.2d 1053, 1056-57 (La. App. 2 Cir. 6/6/84) (modified on other grounds on rehearing).

In this case, the trial court stated that there was "no evidence in the record with regard to this particular hearing [that] they [the certificates of service] weren't complied with in the first place; and, again, certainly complied with with respect to one particular party which would give a reasonable belief that the steps taken in the prosecution of the matter were, in fact, accomplished."

In fact, a copy of Mr. Gremillion's affidavit attesting that he was a self-represented party in the underlying case who was not served with any discovery documents after 2014 was introduced in evidence by Mr. Bisso at the hearing on the exception, as an attachment to the *ex parte* motion for dismissal (Exhibit Bisso 3). The trial court thus erred in stating that no evidence was presented at the hearing to counter Mr. Bisso's assertions in his certificates of service that his discovery documents were served on counsel for all parties.

Additionally, the law requires proof of service of unfiled discovery on all parties, not merely some parties, to interrupt abandonment. *Guillory v. Pelican Real Estate, Inc., supra*, 165 So.3d at 877-78. General statements in a certificate of service that a pleading was served on "all parties" or "all counsel of record," without any specificity as to who was served and by what means, either in the certificate itself or through other authenticating evidence, are not sufficient to meet

27

that burden. *See and compare Lewis v. Digital Cable and Communications North*, 15-345 (La. App. 5 Cir. 11/19/15), 179 So.3d 840, 845.

Nevertheless, even if Mr. Bisso was mistaken, unreasonable, or negligent in his belief that the 2016 discovery requests and responses were served on all parties, the fact that he held that belief is relevant in determining whether he deliberately engaged in conduct that was intended to mislead his clients and prevent them from discovering his alleged malpractice in allowing three years to go by in their case without taking any formal action to prevent its abandonment under La. C.C.P. art. 561.

## B. Fraudulent Intent

The primary basis for the Tumminellos' claim of post-malpractice fraudulent concealment is the assertion that Mr. Bisso misled them about the status of the case and billed them for work he did not perform from the time the underlying case was deemed abandoned by operation of law in 2017 until he withdrew from the case in 2020 and returned their file to them.[12]

The only bill that was introduced in evidence was the bill relating to the July 24, 2019 status conference. After considering the discrepancy between the description of legal work performed by Mr. Bisso in that bill and the contents of the minute entry for that date, the trial court found that Mr. Bisso gave a plausible explanation for the discrepancy, despite the fact that he did not specifically recall what he did that day. The record supports this finding, which we cannot say is clearly wrong.

---

[12] The Tumminellos also asserted that Mr. Bisso misled them about his experience with medical malpractice litigation from the outset of his representation of them. They offered evidence on that issue, over Mr. Bisso's objection that such evidence was irrelevant to the issues presented by the peremption exception. The trial court overruled the objection, and that ruling is not before us for review. In their brief, the Tumminellos cite some broad language in *Lomont* in support of their assertion that *any* misrepresentation by an attorney with the intention to obtain an unjust advantage or to cause loss or inconvenience to the client will prohibit application of the peremptive periods in La. R.S. 9:5605. 172 So.3d at 628. However, they acknowledge that the purpose of the fraud exception in La. R.S. 9:5605(E), as explained in *Lomont*, is to prevent an unscrupulous attorney from concealing *malpractice* during the statutory peremptive periods to avoid a legal malpractice claim. We agree that, for purposes of this appeal, the focus should be on misrepresentations made after the date of the alleged malpractice in 2017.

Aside from that bill, there was no evidence as to what else Mr. Bisso charged his clients for from 2017 to 2020, the critical time period for purposes of the exception. The Tumminellos did not introduce any other bills in evidence or present any other evidence to establish what types of legal work or expenses Mr. Bisso billed them for from 2017 to 2020, despite Mrs. Tumminello's testimony that they had "a substantial amount of bills" in their records or in the file Mr. Bisso returned to them.[13] They did not offer any explanation for their failure to introduce other bills in their possession. Under these circumstances, the presumption that those bills would have been unfavorable to them applies. *Salone v. Jefferson Parish Dept. of Water*, 94-212 (La. App. 5 Cir. 10/12/94), 645 So.2d 747, 750. Such a presumption is not necessarily fatal, as indicated in *Salone*. However, the lack of evidence about what Mr. Bisso charged his clients for from 2017 to 2020, aside from the one bill discussed above, significantly undermines their assertion that Mr. Bisso intentionally misled them about the status of the case during that time by billing them for work he did not do.

Although the Tumminellos were justifiably concerned about the fact that their case had not been set for trial by 2017, which was more than twelve years after Mr. Bisso enrolled in the case, there is no evidence that they discussed those concerns with Ms. Schlosser, who was still working with Mr. Bisso on the case in some capacity, or with anyone else other than Mr. Bisso, despite their general understanding that a court case could be dismissed due to inactivity. Nor is there any evidence that they expressed their concerns about any of Mr. Bisso's monthly bills to Ms. Schlosser, including the bill for the July 2019 status conference that included time for his meeting with her to prepare for the conference.

---

[13] In closing arguments, their attorney alluded to some things Mr. Bisso may have billed his clients for during that time, but those statements were not substantiated by any evidence introduced at the hearing and cannot be considered as evidence. *State, Dept. of Social Services v. Bennette*, 04-364 (La. App. 5 Cir. 10/12/04), 886 So.2d 1126, 1129.

We recognize that the Tumminellos are not lawyers, and that they relied on Mr. Bisso to move the case forward and protect their legal rights. However, with the limited evidence presented on the fraudulent billing issue, we cannot say the trial court was clearly wrong in resolving that issue in Mr. Bisso's favor.

The trial court found it significant that Mr. Bisso did not know the abandonment issue had been raised in the underlying case until after he withdrew. This fact is relevant to whether he had any intent to deceive his clients before he withdrew in order to "run out the clock" on a potential legal malpractice claim against him, as the Tumminellos claimed. *See and compare Lomont, supra*, where the evidence established that the attorney knew she had committed malpractice by failing to record a community property settlement in the public records and deliberately hid from her client the fact that this failure constituted malpractice while still representing the client and assuring the client that she could fix the problem. 172 So.3d at 633-34, 638.

Even if the evidence presented at the hearing were deemed sufficient to prove that Mr. Bisso committed malpractice by allowing more than three years to pass without taking any formal action in the underlying case—an assumption we make for discussion purposes only, without deciding—the question of whether he intended to conceal the malpractice from his client remains.

Considering the totality of the evidence on that issue, we cannot say the trial court was clearly wrong in finding that the evidence did not establish that Mr. Bisso fraudulently billed the Tumminellos for work he did not perform or engaged in any other conduct after the 2017 abandonment date with the intent to deceive or mislead them in order to delay their discovery that their case had been abandoned until after the time for bringing a legal malpractice claim against him had passed.

The record supports the trial court's observation that its finding of a lack of fraudulent intent on Mr. Bisso's part was not based solely on his self-serving

testimony. Although certain aspects of his testimony could be construed as self-serving, his accounts of the actions he took with respect to the 2016 discovery and the 2019 status conference were not implausible on their face, and there was some corroborating evidence to support his testimony. This case is thus distinguishable from *Lomont*, where the attorney's testimony was implausible on its face and unsupported by any other evidence apart from one email she sent to herself, despite references in her testimony to correspondence and pleadings she claimed to have prepared that had a bearing on the peremption issue. 172 So.3d at 634.

Based on our review of the record in its entirety, and notwithstanding the instances we have mentioned in which certain portions of the trial court's findings are not supported by the law or the evidence, we cannot say that the trial court was clearly wrong, or that it abused its discretion, or that it erred as a matter of law, in crediting Mr. Bisso's testimony about his intent and concluding that he did not intend to deceive the Tumminellos, through his communications or his lack of communication with them, from April 3, 2017 forward, in order to prevent them from bringing a malpractice claim against him.[14]

Unless fraud is proven, the three-year peremptive period in La. R.S. 9:5605 (A) applies, even though the attorney continues to represent the clients after the alleged malpractice occurs and the clients do not discover that they have a viable cause of action for legal malpractice, or do not suffer any damages as a result of the alleged malpractice, during the three-year period. *See and compare Reeder v. North*, 97-0239 (La. 10/21/97), 701 So.2d 1291, 1295-96; *Gaudet v. Coregis Insurance Co.*, 97-130 (La. App. 5 Cir. 6/30/97), 697 So.2d 356, 357 (appeal stayed pending the Supreme Court's decision in *Reeder*), *affirmed in unpublished*

_____

[14] The appeal is from the trial court's judgment, not its reasons for judgment. If the judgment is correct, it should be affirmed, regardless of the trial court's reasons for ruling as it did. *Fowler v. St. Charles Hospital*, 93-588 (La. App. 5 Cir. 12/28/93), 630 So.2d 293, 295-96, *writ denied*, 94-0248 (La. 3/18/94), 634 So.2d 860, and cases cited therein.

*opinion* (La. App. 5 Cir. 2/11/98), 709 So.2d 1110 (Table); *Drennan v. Killian*, *supra*, 712 So.2d at 980; and *LeBlanc v. Andrieu*, *supra*, 852 So.2d at 1049.

## CONCLUSION

As did the trial court, we recognize that the merits of the legal malpractice claim against Mr. Bisso are not before us, and we express no opinion about the quality or the appropriateness of his legal representation of his clients.

The sole issue before us in this appeal is whether the trial court properly granted Mr. Bisso's exception of peremption under La. R.S. 9:5605. The law on this issue is well-settled and sometimes produces harsh and inequitable results for clients, as acknowledged in the case law interpreting the statute. See, for example, *Reeder v. North*, 701 So.2d at 1296-97, in which the Louisiana Supreme Court stated that while the statute "may seem unfair in that a person's claim may be extinguished before he realizes the full extent of his damages," it was within the Legislature's prerogative "to put a three-year absolute limit on a person's right to sue for legal malpractice[.]" 701 So.2d at 1296-97. *See also Drennan v. Killian*, 712 So.2d at 980, in which this Court recognized the perceived inequities in the statute, as set forth in *Reeder*.

We acknowledge, as did the trial court, that the law produces a harsh result in this instance. However, we are bound to apply the law as written. Accordingly, we affirm the trial court judgment granting Mr. Bisso's exception of peremption and dismissing the claims of the Tumminellos against him with prejudice.

## JUDGMENT AFFIRMED

KIM S. TUMMINELLO AND TIM
TUMMINELLO, INDIVIDUALLY, AND
ON BEHALF OF SAVANNA
TUMMINELLO

VERSUS

REGEL L. BISSO

NO. 23-CA-560

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

## SCHLEGEL, J., CONCURS WITH REASONS

I concur with my colleague's opinion to affirm the trial court's

judgment, granting Mr. Bisso's exception of peremption and dismissing

the Tumminellos' claims against him with prejudice.  The Tumminellos'

legal malpractice claims against Mr. Bisso are perempted under La. R.S.

9:5605 because they did not file their claims within three years after the

undisputed date of the alleged malpractice of April 3, 2017.  Further, I

agree that the trial court was not manifestly erroneous in determining that

the fraud exception under La. R.S. 9:5605(E) did not apply in this case.

But I write separately only to concur in affirming the trial court's

decision.  My colleague spends considerable time though, discussing the

merits of the legal malpractice claims and laws governing abandonment

despite her recognition that the "merits of the legal malpractice claims are

not before us in this appeal."  This is dicta in my estimation.

On February 5, 2021, the Tumminellos filed a legal malpractice

lawsuit against Mr. Bisso alleging that they obtained their legal file after

Mr. Bisso withdrew from their case on February 7, 2020.  They explain

that their new counsel reviewed the file and informed them that their

medical malpractice case was abandoned due to inaction.  Based on this

information, the Tumminellos asserted in their petition that Mr. Bisso

"negligently failed to take necessary steps to pursue their medical

1

malpractice case and preserve their legal rights causing their case to be abandoned by operation of law."

On April 7, 2021, Mr. Bisso filed an exception of peremption arguing that the Tumminellos' legal malpractice claims are perempted under La. R.S. 9:5605 because they did not file their lawsuit within three years of the undisputed date of the alleged malpractice of April 3, 2017. Shortly thereafter, the Tumminellos filed a motion for leave to file their First Supplemental and Amending Petition, which the trial court granted on June 14, 2021. In the amended and supplement petition, the Tumminellos asserted that the fraud exception to the peremptive period set forth under La. R.S. 9:5605(E) applied because Mr. Bisso failed to inform them that their medical malpractice case abandoned in April 2017, and he attempted to conceal the abandonment by continuing to bill them for purported legal services. The Tumminellos further argued in their opposition to the exception of peremption that pursuant to the fraud exception, their suit filed on February 5, 2021 was timely because they filed it within one year after Mr. Bisso withdrew as their counsel on February 7, 2020.

It is undisputed that pursuant to the Louisiana Supreme Court's decision in *Lomont v. Bennett*, 14-2483 (La. 6/30/15), 172 So.3d 620, 634, *cert. denied*, 577 U.S. 1139, 136 S.Ct. 1167, 194 L.Ed.2d 178 (2016), the question to determine whether the fraud exception applies in this matter is whether Mr. Bisso engaged in actions demonstrating specific intent to deceive the Tumminellos about the alleged abandonment of their case. In *Lomont*, the court focused on whether the attorney's misrepresentations were deliberate and knowing. *Id.*

2

My colleague explains the testimony and exhibits that the trial court received at the evidentiary hearing in detail. After considering the evidence and arguments of counsel, the trial court determined that Mr. Bisso did not engage in any fraudulent billing or other fraudulent conduct to conceal alleged legal malpractice from his clients. In its extensive oral reasons, the trial court clarified that the issue before it was not whether the medical malpractice case was actually abandoned, but whether Mr. Bisso acted with the specific intent to defraud the Tumminellos by attempting to hide the alleged malpractice after it occurred on April 3, 2017. The trial court concluded that no fraudulent concealment occurred because Mr. Bisso reasonably believed the case was not abandoned based on the discovery requests he sent on behalf of the Tumminellos in June 2016, the responses sent by defendants in July 2016, and the motion for status conference Mr. Bisso filed in June 2019. The discovery responses sent by the defendants included a certificate of service indicating it was emailed to all counsel of record. The trial court determined that these responses sent by defendants corroborated Mr. Bisso's testimony explaining that he never believed the matter was abandoned. The trial court further observed that the judgment dismissing the medical malpractice case as abandoned was not signed until 2021; a year after Mr. Bisso withdrew as counsel.

The trial court explained that without knowledge of the abandonment, it was impossible to attribute fraudulent conduct to Mr. Bisso by means of continued billing or representation of the Tumminellos after April 2017. Further, the only bill the Tumminellos presented in support of their allegations of continued fraudulent billing was the August 1, 2019 bill containing a charge for attending the July 24, 2019 status conference. The trial court accepted Mr. Bisso's explanation that he may

have gone to the courthouse on that day for the status conference and then learned when he arrived that it was continued due to an ongoing civil trial. Thus, the trial court concluded that "it does not seem plausible to believe that he took any actions to fraudulently conceal that malpractice."

On appeal, the Tumminellos argue that the fraud exception applies because Mr. Bisso failed to meet his burden to prove the "Tumminellos were reasonably informed of the legal work performed" and that "his monthly invoices misrepresented the status of the case and concealed" the abandonment of the case on April 4, 2017. However, as explained above, the Tumminellos only introduced one bill into evidence and the trial court determined that the representations in this bill did not constitute fraud or fraudulent concealment. The trial court recognized that Mr. Bisso was dilatory in moving the case forward. However, it also recognized that dilatory conduct is not sufficient to utilize the fraud exception to avoid the three-year peremptive period under La. R.S. 9:5605.

After reviewing the record and applicable law, I cannot find that the trial court was clearly wrong. This should be the end of the analysis as the sole question before this Court is whether the district court's findings of fact, including its findings on the issue of fraud, were clearly wrong. *See Lomont*, 172 So.3d at 627, 633. If the trial court's findings are reasonable in light of the record reviewed in its entirety, an appellate court cannot reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.* at 627. Further, credibility determinations are within the district court's discretion and should not be disturbed, absent a determination that the district court abused its discretion. *Id.* at 633.

4

| | |
|---|---|
| KIM S. TUMMINELLO AND TIM TUMMINELLO, INDIVIDUALLY, AND ON BEHALF OF SAVANNA TUMMINELLO | NO. 23-CA-560 |
| | FIFTH CIRCUIT |
| | COURT OF APPEAL |
| VERSUS | STATE OF LOUISIANA |
| REGEL L. BISSO | |

**MARCEL, J., DISSENTS WITH REASONS**

I respectfully dissent from the majority opinion in this case, and would reverse the judgment of the trial court granting the exception of peremption.

First, in addition to their claims for fraudulent concealment, plaintiffs have alleged in their amended petition to allege that Mr. Bisso fraudulently billed them on for legal services rendered on July 26, 2019. Fraudulent billing is its own act of malpractice, separate and apart from Mr. Bisso's failure to prosecute the case and failure to keep his clients apprised of the status of the litigation. I believe on the face of the petition the Tumminellos claim for fraudulent billing is not perempted since the petition was filed on February 5, 2021, within the one year of the Tumminellos discovering that the services for which they were being billed were not rendered. To dismiss the Tumminellos' claims for fraudulent billing as peremempted while allowing Mr. Bisso's reconventional claims against them for same bills to proceed is unfair and unjust.

Additionally, I also disagree with my colleagues interpretation of the Supreme Court's decision in *Lomont v. Bennett*, 14-2483 (La. 6/30/15), 172 So.3d 620. In that case, the Court examined a split between the

circuits as to whether an attorney's post-malpractice actions consisting of fraudulent concealment can amount to fraud within the meaning of La. R.S. 9:5605(E). The Court stated, "**any** action consisting of 'a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause loss or inconvenience to the other' will prohibit the application of the peremptive period." *Id*. at 628 (emphasis original). Further, "**allegations** of misrepresentation, suppression or concealment can constitute fraud within the meaning of La. R.S. 9:5605(E)." *Id*. at 629 (emphasis supplied.) The Court began its analysis of the plaintiff's allegations by noting that, under La. C.C. art. 1953, fraud can result from silence or inaction. *Id*. Refusal to speak in the face of an obligation to do so is not merely unfair but is fraudulent. *Id*. Fraud may be established by circumstantial evidence.

Like the trial court and the majority in the case before us, the trial court in *Lomont* found that the attorney had no specific intent to commit fraud as required under La. C.C. art. 1953. Applying the manifest error standard, the Supreme Court nevertheless reversed this decision after finding the attorney's story to implausible that it was clearly wrong for the district court to give it credit. *Id*. at 633. The Court found that the record was devoid of proof that the attorney had fulfilled her affirmative duty under Rule 1.4 of the Rules of Professional Conduct to keep the client reasonably informed about the status of the matter and give the client sufficient information to participate intelligently in the decisions concerning the objectives of the representation and the means by which they are to be pursued. *Id*.

2

Upon my review of the entire record, I find Mr. Bisso's claim that he was unaware that the medical malpractice case had been abandoned until he was served with the Tumminello's petition in 2021 to be implausible and unreasonable, especially in light of the Tumminello's testimony concerning their January 2020 parking lot confrontation and Mr. Bisso's decision one month later to terminate his representation and turn over the case file. Mr. Bisso testified that, between the parking lot confrontation and his filing of the motion to withdraw as counsel, he did not communicate with his clients about the status of their case. His other testimony indicated that Mr. Bisso's primary communications with the Tumminellos consisted of mailed invoices and verbal requests for payment of those invoices. The Tumminellos testified that Mr. Bisso did not keep them regularly informed as to the status of their case. As in *Lomont*, the record is devoid of proof that Mr. Bisso fulfilled his affirmative duty under Rule 1.4 of the Rules of Professional Conduct to keep the Tumminellos reasonably informed about the status of the medical malpractice case or provide them with information to participate intelligently in decisions concerning the prosecution of the case. Mr. Bisso's testimony that he was unaware of the status of the case is unsupported, self-serving, and inconsistent with his contractual obligations as an attorney. His inactions are indicative of fraudulent concealment in light of his affirmative duties to speak. I do not believe Mr. Bisso met his burden to show, by a preponderance of the evidence, that he did not commit fraud as alleged in the petition, and therefore did not meet his burden of proof on the exception of peremption. Accordingly, I would reverse the decision of the trial court and allow the Tumminellos to proceed with their claims.

3

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **NOVEMBER 7, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 23-CA-560

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN C. GREFER (DISTRICT JUDGE)
PIERRE F. GREMILLION (APPELLANT)          DAVID S. DALY (APPELLEE)          ELLIOT M. LONKER (APPELLEE)

**MAILED**